90 F.3d 396
 96 Cal. Daily Op. Serv. 5453, 96 Cal. Daily
Op. Serv. 7461,
96 Daily Journal D.A.R. 12,266,
96 Daily Journal D.A.R. 8897
Alfredo Aries DULDULAO, Jr., Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70213.
 United States Court of Appeals,
Ninth Circuit.
 Submitted July 10, 1996*.
Decided July 24, 1996.
As Amended Oct. 8, 1996.
 
 Kendall Wong, Honolulu, Hawaii, for petitioner Alfredo Aries Duldulao.
 Stephen W. Funk, United States Department of Justice, Washington, D.C., for respondent Immigration and Naturalization Service.
 Petition for Review of an Order of the Board of Immigration Appeals.
 Before: CHOY, O'SCANNLAIN and LEAVY, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 A provision of the Antiterrorism and Effective Death Penalty Act of 1996 denies judicial review of deportation orders involving aliens convicted of firearms offenses. We must decide whether the new law applies to petitions pending in this court on the date of its enactment.
 
 
 2
 * Alfredo Aries Duldulao, Jr., a native of the Philippines, entered the United States as a lawful permanent resident in 1975. In 1989 Duldulao was convicted in the Circuit Court of the State of Hawaii of two firearm offenses in violation of section 134 of the Hawaii Revised Statutes.
 
 
 3
 Before Duldulao's scheduled release from prison in August 1994, the Immigration and Naturalization Service ("INS") issued and served an order to show cause charging that Duldulao was subject to deportation under section 241(a)(2)(C) of the Immigration and Nationality Act ("INA") (codified as amended at 8 U.S.C. § 1251(a)(2)(C)) for his firearm convictions.[1] Duldulao conceded at his deportation hearing held August 19, 1994, that he was deportable under section 241(a)(2)(C). He applied, however, for an adjustment of status under INA section 245 (codified as amended at 8 U.S.C. § 1255). The Immigration Judge ("IJ") denied the application and ordered that Duldulao be deported. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision and dismissed Duldulao's appeal on February 21, 1995.
 
 
 4
 Duldulao filed a petition for review with this court on March 3, 1995, pursuant to INA section 106(a) (codified as amended at 8 U.S.C. § 1105a(a)). At the time Duldulao filed his petition, section 106(a) conferred exclusive jurisdiction upon this court to review his final order of deportation:
 
 
 5
 The procedures prescribed by, and all the provisions of chapter 158 of Title 28 shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title or comparable provisions of any prior Act....
 
 
 6
 8 U.S.C. § 1105a(a).
 
 
 7
 On April 24, 1996, after Duldulao filed his petition, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Title IV of the Act contains a series of amendments to the INA regarding the removal and exclusion of terrorist and criminal aliens. Among the amendments, section 440(a) revokes our jurisdiction to review final orders of deportation against aliens convicted of certain enumerated criminal offenses, including Duldulao's firearm offenses. Section 440(a) amends 8 U.S.C. § 1105a(a)(10) to read as follows:
 
 
 8
 (10) Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2) ... (C) ... shall not be subject to review by any court.
 
 
 9
 AEDPA, Pub.L. No. 104-132, § 440(a), 110 Stat. 1214 (1996) (to be codified at 8 U.S.C. § 1105a(a)(10)). On June 10, 1996, the INS filed a motion to dismiss Duldulao's petition for lack of jurisdiction pursuant to section 440(a).
 
 II
 
 10
 Duldulao does not dispute that he is deportable under section 241(a)(2)(C) for his firearm convictions. At issue is whether section 440(a) applies to revoke our jurisdiction over petitions pending on the date of its enactment.
 
 
 11
 To resolve this issue, we must first determine "whether Congress has expressly prescribed the statute's proper reach." Landgraf v. USI Film Products, 511 U.S. 244, ----, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994). If so, we simply apply the terms of the statute. See U.S. ex rel. Schumer v. Hughes Aircraft Co., 63 F.3d 1512, 1517 (9th Cir.1995). Upon careful review of the AEDPA, and in particular Title IV, we conclude that Congress has not made express provision for petitions pending on section 440(a)'s date of enactment.[2]
 
 
 12
 We therefore apply judicial default rules for newly enacted statutes that do not expressly prescribe prospective or retrospective application. As a general rule, we presume that statutes affecting substantive rights or obligations apply prospectively only. Landgraf, 511 U.S. at ---- - ----, 114 S.Ct. at 1500-01. This presumption applies when a new statute "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." Id. at ----. 114 S.Ct. at 1505; see also Schumer, 63 F.3d at 1517.
 
 
 13
 A jurisdictional statute "usually takes away no substantive right but simply changes the tribunal that is to hear the case." Landgraf, 511 U.S. at ----, 114 S.Ct. at 1501. As such, the "presumption against retroactive application of new legislation to pending cases ... does not apply to rules conferring or withdrawing jurisdiction." In re Arrowhead Estates Dev. Co., 42 F.3d 1306, 1311 (9th Cir.1994) (citing Landgraf, 511 U.S. at ----, 114 S.Ct. 1483). "Present law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.' " Landgraf, 511 U.S. at ----, 114 S.Ct. at 1502 (quoting Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 98-100, 113 S.Ct. 554, 565, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring)).
 
 
 14
 The Supreme Court has long held that "when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall within the law." Bruner v. United States, 343 U.S. 112, 116-17, 72 S.Ct. 581, 584, 96 L.Ed. 786 (1952). The Court reaffirmed this "consistent practice" in Landgraf, noting that it has "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." Landgraf, 511 U.S. at ----, 114 S.Ct. at 1501.
 
 
 15
 AEDPA section 440(a) withdraws the jurisdiction that Congress had previously conferred on courts of appeals to review certain final orders of deportation. When a statute confers jurisdiction and Congress repeals that statute, "the power to exercise such jurisdiction [is] withdrawn, and ... all pending actions f[a]ll, as the jurisdiction depend[s] entirely upon the act of Congress." The Assessors v. Osbornes, 76 U.S. (9 Wall.) 567, 575, 19 L.Ed. 748 (1870).
 
 
 16
 AEDPA section 440(a), which affects the power of the court rather than the rights and obligations of the parties, thus revokes our jurisdiction to review Duldulao's final order of deportation. Accord Mendez-Rosas v. INS, 87 F.3d 672 (5th Cir.1996).
 
 III
 
 17
 Duldulao's only argument in response to the INA's motion to dismiss his petition is that section 440(a) is unconstitutional. He broadly asserts that section 440(a) violates separation of powers and due process. We disagree. The power of Congress to regulate the admission of aliens and to define the jurisdiction of lower federal courts defeats each asserted basis of unconstitutionality.
 
 
 18
 " 'For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government.' " Reno v. Flores, 507 U.S. 292, 305, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993) (quoting Mathews v. Diaz, 426 U.S. 67, 81, 96 S.Ct. 1883, 1892, 48 L.Ed.2d 478 (1976)). In fact, " 'over no conceivable subject is the legislative power of Congress more complete.' " Id. at 305, 113 S.Ct. at 1449 (quoting Fiallo v. Bell, 430 U.S. 787, 792, 97 S.Ct. 1473, 1477-78, 52 L.Ed.2d 50 (1977)) (other citation omitted). The Supreme Court has " 'long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.' " Fiallo, 430 U.S. at 792, 97 S.Ct. at 1478 (quoting Shaughnessy v. Mezei, 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953)) (other citations omitted).[3]
 
 
 19
 This court has jurisdiction to review certain final orders of deportation and exclusion against aliens only because Congress has conferred it. "Congress has the constitutional authority to define the jurisdiction of the lower federal courts." Keene Corp. v. United States, 508 U.S. 200, 207, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993); see also Palmore v. United States, 411 U.S. 389, 400-01, 93 S.Ct. 1670, 1677-78, 36 L.Ed.2d 342 (1973). Since the Constitution empowers Congress to define lower federal court jurisdiction and formulate policies for the expulsion or exclusion of aliens, section 440(a) does not, as Duldulao argues, "offend the separation of powers."
 
 
 20
 Nor does it offend due process. In Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1951), "[s]till the leading case involving a test of the legality of detention under immigration laws," Flores v. Meese, 942 F.2d 1352, 1359 (9th Cir.1991), the Court explained that "[t]he power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised entirely through executive officers, with such opportunity for judicial review of their action as Congress may see fit to authorize or permit." Carlson, 342 U.S. at 537, 72 S.Ct. at 532-33 (internal quotation marks and footnote omitted). As "[d]eportation is not a criminal proceeding and has never been held to be punishment ... [n]o judicial review is guaranteed by the Constitution." Id. (footnotes omitted). In recent times, the Supreme Court has not questioned, for example, the constitutionality of statutes barring judicial review of individual status adjustment denials. See Reno v. Catholic Social Services, Inc., 509 U.S. 43, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993); McNary v. Haitian Refugee Center, Inc., 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). Since aliens have no constitutional right to judicial review of deportation orders, section 440(a) does not offend due process.[4]
 
 IV
 
 21
 Because we lack jurisdiction, we dismiss Duldulao's petition for review.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed. R. App. P. 34(a), Ninth Circuit R. 34-4
 
 
 [1]
 Section 241(a)(2)(C) provides: "Any alien who at any time after entry is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law is deportable." 8 U.S.C. § 1251(a)(2)(C)
 
 
 [2]
 Section 440(a), like many congressional enactments, has no provision for its effective date. Nor did Congress specify an effective date for the AEDPA as a whole. The AEDPA does, however, provide effective dates for various discrete sections, one of which is subsection (e) of section 440. Section 440(f) provides that "[t]he amendments made by subsection (e) shall apply to convictions entered on or after the date of the enactment of this Act...." The INS argues that had Congress similarly limited the application of subsection (a), the statute's express language would so provide. See Brown v. Gardner, 513 U.S. 115, ----, 115 S.Ct. 552, 556, 130 L.Ed.2d 462 (1994) (" '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion' ") (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300-01, 78 L.Ed.2d 17 (1983))
 We decline to accept the INS's invitation to find that, reading the effective date of section 440(e) and the silence of section 440(a) in pari materia, Congress has expressly prescribed the proper reach of section 440(a). Section 440(e) adds additional offenses to the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43). Those changes, unrelated to jurisdiction, are too far removed from judicial review under 8 U.S.C. § 1105a(a) to impute an effective date for section 440(a). Rather, Congress' silence in this regard signals the absence of any clear direction. See Gozlon-Peretz v. United States, 498 U.S. 395, 404, 111 S.Ct. 840, 846-47, 112 L.Ed.2d 919 (1991) (specific effective date for one section and silence for another demonstrated, applying Russello rule of construction, the absence of clear direction for the latter).
 
 
 [3]
 See Galvan v. Press, 347 U.S. 522, 531, 74 S.Ct. 737, 743, 98 L.Ed. 911 (1954) ("[T]hat the formulation of ... policies [pertaining to the entry of aliens and their right to remain here] is entrusted exclusively to Congress has become about as firmly embedded in the legislative and judicial tissues of our body politic as any aspect of our government."); Harisiades v. Shaughnessy, 342 U.S. 580, 588-89, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952) ("It is pertinent to observe that any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.")
 
 
 [4]
 Section 440(a) clearly rendered Duldulao's final order of deportation "immune to direct attack." See Heikkila v. Barber, 345 U.S. 229, 235-36, 73 S.Ct. 603, 606-07, 97 L.Ed. 972 (1953). The availability and scope of collateral habeas review where the "paramount law of the Constitution" may require judicial intervention was not an issue before us, see Carlson, 342 U.S. at 537, 72 S.Ct. at 532, and we need not decide whether section 440(a) purports to preclude it, cf. Hincapie-Nieto v. INS, 92 F.3d 27, 30-31 (2d Cir.1996); Salazar-Haro v. INS, 95 F.3d 309 (3d Cir.1996)