**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ANTHONY DUENAS SANTOS,
　　　　　　　　　　*Petitioner,*

　　　　　　v.

THE PEOPLE OF THE TERRITORY OF
GUAM,
　　　　　　　　　　*Respondent.*

No. 03-70472

D.C. No.
CR-00-00006

OPINION

Certiorari to the Supreme Court of Guam

Argued and Submitted
April 30, 2004—Saipan, Northern Mariana Islands

Filed January 3, 2006

Before: Mary M. Schroeder, Chief Judge,
Alfred T. Goodwin and J. Clifford Wallace, Circuit Judges.

Opinion by Judge Goodwin;
Concurrence by Judge Wallace

23

**COUNSEL**

David J. Highsmith, Hagatna, Guam, for the petitioner.

B. Ann Keith, Assistant Attorney General, Hagatna, Guam, for the respondent.

**OPINION**

GOODWIN, Circuit Judge:

Anthony Duenas Santos seeks review of his conviction in the Guam Superior Court on charges of aggravated murder and possession and use of a deadly weapon. His convictions were affirmed by the Guam Supreme Court. This appeal is dismissed for want of jurisdiction.

The Guam Superior Court had original jurisdiction pursuant to 7 GUAM CODE ANN. § 3105. The Guam Supreme Court had jurisdiction pursuant to 7 GUAM CODE ANN. § 3107(b). Santos timely filed his petition for writ of certiorari in this court pursuant to former 48 U.S.C. § 1424-2, and his petition was granted on June 18, 2003. We calendared the case for oral argument on April 30, 2004. At the close of argument, we ordered submission for decision, and initiated the lengthy process of obtaining the record from Guam.

On October 30, 2004, Congress amended 48 U.S.C. § 1424-2 striking the language granting to this court, for a period of time which had not yet expired, "jurisdiction to review by writ of certiorari all final decisions of the highest court of Guam from which a decision could be had." Act of Oct. 30, 2004, Pub. L. No. 108-378, § 2. The question now presented is whether the jurisdiction previously granted by § 1424-2, and existing at the time certiorari was granted, the briefs were filed, and the case was argued and submitted,

evaporated upon the enactment date of the repeal, or has continued to exist until the pending appeal could be decided.

**[1]** In 1952, the Supreme Court was confronted with a similar question and held that when a jurisdictional statute under which an action had been properly filed was repealed, without any reservation as to pending cases, all such pending cases were to be dismissed. *Bruner v. United States,* 343 U.S. 112, 115-117 (1952). That holding was reinforced when cited with approval in a litigation setting that did not involve the jurisdiction of a court to decide a case. *Landgraf v. USI Film Products*, 511 U.S. 244, 274 (1994). The court ruled on the effect of a statute upon an action that was pending in court on the date of enactment, but which arose out of events that had transpired before the statute creating a remedy had been enacted. 511 U.S. 244. The *Landgraf* case was dealing with a statute silent on the question of retroactivity, and ruled that unless retrospective effect is expressed by Congress, it will not be presumed. *Id.* at 280.

Because the question before us is the survival of jurisdiction to decide cases after that jurisdiction has been withdrawn, we look to *Bruner*, rather than to *Landgraf*, for relevant precedent. In *Bruner*, the Supreme Court cited *inter alia*, *Ex parte McCardle*, *Bruner*, 343 U.S. at 116-17 (citing, *inter alia*, 74 U.S. (7 Wall.) 506, 514 (1868)), which holds: "Jurisdiction is the power to declare the law, and when it ceases to exist, the only function of the court is that of announcing the fact and dismissing the [case]." *Ex parte McCardle*, 74 U.S. (7 Wall.) at 514.

**[2]** Absent another directive, we are bound to apply *Bruner*'s reasoning that a jurisdiction-withdrawing statute does not "alter[ ] the nature or validity of" rights or liabilities but "simply reduce[s] the number of tribunals authorized to hear and determine such rights and liabilities." *Bruner*, 343 U.S. at 117. In *Bruner*, the statute in question removed the jurisdiction of federal district courts over certain civil actions

brought by employees of the United States, but preserved jurisdiction in the Court of Claims for those actions. *Id.* at 115.

There is no principled distinction between *Bruner*'s jurisdiction-withdrawing statute and this one, which removes the jurisdiction of the Ninth Circuit Court of Appeals to hear appeals from Guam courts but preserves jurisdiction over the same cases in the Guam court system and review by certiorari in the United States Supreme Court.

We have held that a jurisdiction-withdrawing provision of AEDPA expressing no other effective date barred review of a petition pending before us on the date of enactment. *See Duldulao v. INS,* 90 F.3d 396, 399 (9th Cir. 1996) (applying *Landgraf* to hold AEDPA section 440(a) retroactive because it "affects the power of the court rather than the rights and obligations of the parties"); *see also Nakaranurack v. United States*, 231 F.3d 568, 571 (9th Cir. 2000) (applying *Duldulao*).

**[3]** Here, Congress has amended the distribution of appellate jurisdiction in the Territory of Guam without expressing an intent as to the effective date of its new statute. We know only that before we could obtain the lengthy record and agree upon a disposition of a certiorari review then pending before our court, Congress had taken away our power to hear the case. The withdrawal of our power to hear the case carried with it the destruction of our power to decide the case. *Bruner*, 343 U.S. at 115-117; *see also Ex parte McCardle*, 74 U.S. (7 Wall.) at 514.

The only authority we have found that lends apparent weight to the suggestion that we refuse to follow the *Ex parte McCardle* line of cases is our *Gioda v. Saipan Stevedoring Co.,* 855 F.2d 625 (9th Cir. 1988). Following World War II, the Northern Mariana Islands were placed under United Nations trusteeship with the United States of America the des-

ignated trustee. After lengthy negotiations between traditional leaders of the inhabited islands (Saipan, Tinian, and Rota) and the government of the United States, the trusteeship was phased out and replaced by the Covenant to Establish a Commonwealth of the Northern Mariana Islands (CNMI). Implementing the Covenant, Congress enacted Public Law No. 95-157 (1977), which created the District Court for the Northern Mariana Islands, with both trial and appellate divisions, a custom that the Trust Territories had followed in island courts. The appellate division was to have such appellate jurisdiction as the Constitution and laws of the Commonwealth should provide. *See* 48 U.S.C. § 1694 (b). In due course, the island legislature enacted statutes conferring concurrent appellate jurisdiction, for a limited time, upon the District Court to hear and decide appeals from the local trial courts as well as from its own trial division.

After a further period of litigation and legislation, Congress enacted legislation terminating the jurisdiction of the appellate division of the District Court to hear appeals from the trial division, permitting the appellate division to continue to decide appeals from the island courts. *See* Pub. L. No. 98-454 (1985) (codified at 48 U.S.C. § 1694b(a)). The 1985 statute terminating the jurisdiction of the appellate division of the District Court to hear such appeals became effective while the Saipan Stevedoring appeal was under consideration by the appellate division. That court, following the Supreme Court's decision in *Bruner,* concluded that its jurisdiction was terminated. Pursuant to 28 U.S.C. § 1631, the appellate division attempted to transfer the appeal to this court. A motions panel promptly forwarded the appeal to an argument panel, which decided that it had jurisdiction, at least to consider its jurisdiction. That panel then held that it did not have jurisdiction to hear the appeal, and returned the appeal to the District Court.

While our panel cited *Bruner*, which had been the authority relied upon by the appellate division in concluding that it had no jurisdiction to continue, it turned to the construction of the

Transfer Act and declined the transfer. The *Gioda* opinion makes no reference to *Ex Parte McCardle,* but in further reference to *Bruner*, the opinion briefly discusses cases dealing with retroactivity. The panel did mention *Bruner* in connection with the general rule that jurisdiction over pending appeals ends with the repeal of the statute creating jurisdiction, but, as it was preoccupied with the interpretation of the §1631 (the Transfer Act), it concluded that the appellate division retained jurisdiction and remanded the case to the District Court for decision.

**[4]** The statement that the appellate division had continuing jurisdiction was apparently founded on the theory that obiter in a school desegregation case about attorney fees had modified our duty to follow the Supreme Court's express holdings on jurisdiction. The panel cited *Bradley v. School Board,* 416 U.S. 696, 716 (1974), for the proposition that "a new law will not be applied retroactively if its application will result in a manifest injustice." *Gioda*, 855 F.2d at 630. Ignoring the context, that the "new law" the Supreme Court was considering in *Bradley* had to do with attorney fees and not with jurisdiction, the panel went on to opine that the island court's appellate division retained jurisdiction. This extension of obiter in *Bradley* to confer jurisdiction now appears to be a stretch that does not require repetition in the instant case. Whatever may be said on behalf of "manifest injustice" we find nothing in *Gioda* to trump the clear language of *Bruner,* in which the Supreme Court was addressing jurisdiction, and not the retroactivity of statutes dealing with other subjects. In view of the Supreme Court's clear holdings in *Ex parte McCardle* and *Bruner*, both of which are unequivocal and squarely on point, we are without jurisdiction to decide this appeal.

The appeal is dismissed.

WALLACE, Senior Circuit Judge, concurring:

I agree that the recent Congressional enactment has eliminated our jurisdiction to hear the present appeal. Because my analysis differs somewhat from my colleagues, I write separately to explain how existing precedents control this jurisdictional issue and why the number of courts a litigant can appeal to is not a substantive right.

**I.**

The Supreme Court's decisions in *Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1869), and *Bruner v. United States*, 343 U.S. 112 (1952), as well as our own decision in *Duldulao v. INS*, 90 F.3d 396 (9th Cir. 1996), control this appeal.

*McCardle* addressed almost exactly the same issue we have before us: the effect of a Congressional repeal of a jurisdiction-authorizing statute on a pending appeal. McCardle appealed to the Supreme Court under a then-proper jurisdictional statute on February 5, 1867. 74 U.S. (7 Wall.) at 508. The case was argued from March 2 to 9 and taken under advisement. *Id.* at 507-08. On March 27 of that year, Congress repealed the act under which the petitioner's appeal had been taken. *Id.* at 508. Thus, like the present case, the appeal was properly filed, argued, submitted, and taken under advisement. Like the present action, Congress repealed the statute that had authorized jurisdiction while the case was under advisement.

The operative question for the Court was whether jurisdiction still existed. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and *when it ceases to exist*, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* at 514 (emphasis added). Because the Court held jurisdiction was lacking, the court dismissed the appeal. *Id.* at 514-15.

*Bruner,* which also addressed a Congressional jurisdiction-withdrawing statute, similarly mandates a conclusion that we lack jurisdiction. While Bruner's case was pending before the Supreme Court on certiorari review, Congress passed a statute withdrawing district court jurisdiction over Bruner's claim (a claim for overtime compensation against the government). 343 U.S. at 114. Instead, Congress provided for jurisdiction only in the Court of Claims. *Id.* at 115. The Court held that "when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law . . . ." *Id.* at 116-17, *citing*, *inter alia*, *McCardle*, 74 U.S. (7 Wall.) at 506, 514. The Court held that the Congressional act applied to Bruner and therefore the Court lacked jurisdiction. *Id.* at 117. Because there was no "reservation as to pending cases" in the statute at issue here, we lack jurisdiction over the present appeal.

Finally, our own decision in *Duldulao* requires us to find we lack jurisdiction over Santos's appeal. *Duldulao* also involved a jurisdiction-withdrawing statute that became effective during the pendency of a petition to our court. 90 F.3d at 397-398. Duldulao had filed a petition for review from a Board of Immigration Appeals decision ordering his deportation. *Id.* at 397. The petition for review was Duldulao's only potential federal court review of the deportation order. *See id.* at 399-400. Nonetheless, we held that the statute "affects the power of the court rather than the rights and obligations of the parties" and therefore we held we lacked jurisdiction. *Id.* at 399.

*Duldulao* is replete with language that controls this appeal. First, and most importantly, *Duldulao* held that "the 'presumption against retroactive application of new legislation to pending cases *does not apply to rules conferring or withdrawing jurisdiction.*' " *Id.* at 399 (punctuation omitted) (emphasis added), *quoting In re Arrowhead Estates Dev. Co.*, 42 F.3d 1306, 1311 (9th Cir. 1994), *citing Landgraf*, 511 U.S. 244 (1994). *Duldulao* then reiterated that "[t]he Supreme Court

has long held that 'when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall within the law.' " *Id.*, *quoting Bruner*, 343 U.S. at 116-17. Furthermore, "[t]he Court reaffirmed this 'consistent practice' in *Landgraf*, noting that it has 'regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed.' " *Id.*, *quoting Landgraf*, 511 U.S. at 274.

This language is obviously dispositive of this appeal. While Santos could call for an *en banc* court to overrule *Duldulao*, we cannot ignore its controlling effect on this case. *See Barapind v. Enomoto*, 400 F.3d 744, 751 n.8 (9th Cir. 2005) (en banc) (per curiam).

## II.

Santos appears to contend he has a substantive right to appeal to this court and that, based on this "right," this court retains jurisdiction under *Landgraf* and *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997). However, every relevant case has made it clear that a change in the number of tribunals authorized to hear a litigant's arguments does not implicate the litigant's substantive rights.

Beginning with *Bruner*, the Supreme Court has clearly separated substantive rights from the right to appeal to additional courts: a jurisdiction-withdrawing statute does not "alter[ ] the nature or validity of petitioner's rights . . . [but] simply reduce[s] the number of tribunals authorized to hear and determine such rights and liabilities." *Bruner*, 343 U.S. at 117. This statement makes it clear that the ability to appeal to multiple courts is distinct from the substantive rights being appealed. Santos would eliminate the distinction between statutes that affect the "nature or validity of petitioner's rights" and those that affect "the number of tribunals," by turning the

number of courts to which a petitioner can present his arguments into a substantive right.

*Landgraf* similarly and explicitly distinguishes between the ability to appeal and substantive rights. This Supreme Court precedent holds that "[a]pplication of a new jurisdictional rule usually *takes away no substantive right* but simply changes the tribunal that is to hear the case." 511 U.S. at 274 (internal quotations and citations omitted) (emphasis added). "Present law normally governs in such situations because jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties." *Id. Hughes Aircraft Co.* reiterates this authority in its opinion and confirms its continuing vitality. 520 U.S. at 951, *quoting Landgraf*, 511 U.S. at 274.

Santos's argument that he has a substantive right to appeal is therefore without merit. The opinions cited all stress that the number and identity of the courts to which a litigant may present his substantive claims is not a substantive right. Santos's suggested approach would eliminate the distinction between statutes that "speak to the power of the court rather than to the rights or obligations of the parties" by making them one and the same.

Santos's "right" to seek additional review is legally indistinct from McCardle's "right" to seek Supreme Court review, Bruner's "right" to bring his action in the district court, and Duldulao's "right" to petition this court for review of his deportation. Because Santos's substantive rights have not been affected, *Bruner* and *McCardle* control this jurisdictional issue.

## III.

I do not believe it is necessary to discuss *Gioda v. Saipan Stevedoring Co.,* 855 F.2d 625 (9th Cir. 1988), which was never raised by either party. Nor was any argument about

"manifest injustice" ever presented. *See Galvan v. Alaska Dep't of Corr.*, 397 F.3d 1198, 1204 (9th Cir. 2005) ("Courts generally do not decide issues not raised by the parties. If they granted relief to petitioners on grounds not urged by petitioners, respondents would be deprived of a fair opportunity to respond, and the courts would be deprived of the benefit of briefing . . . .") (citation omitted). I therefore do not reach the issue.

**IV.**

This jurisdiction issue is controlled by *McCardle*, *Bruner*, and *Duldulao*, and we therefore lack jurisdiction over the present appeal. Because the number of tribunals a litigant can present his arguments to is not a substantive right, *Landgraf* and *Hughes Aircraft Co.* do not change this analysis.

With these observations, I concur in the result of the majority opinion.