*485 Justice Thomas
delivered the opinion of the Court.
The Legislature of Guam authorized Guam’s Governor to issue bonds to fund the Territory’s continuing obligations. Concluding that the bonds would violate the debt-limitation provision of the Organic Act of Guam, §11, 64 Stat. 387, as amended, 48 U. S. C. § 1423a, the attorney general[1] of Guam refused to sign contracts necessary to issue the bonds. In response, the Governor sought a declaration from the Guam Supreme Court that issuance of the bonds would not violate the Organic Act’s debt limitation. The Guam Supreme Court held that § 1423a limits Guam’s allowed indebtedness to 10 percent of the appraised valuation, not the assessed valuation, of taxable property in Guam. We granted certiorari to decide whether Guam’s debt limitation must be calculated according to the assessed or the appraised valuation of property in Guam. We hold that it must be calculated based on the assessed valuation.
I
In 2003, Guam lacked sufficient revenues to pay its obligations. To supplement revenues, the Guam Legislature authorized the Governor to issue bonds worth approximately $400 million. See Guam Pub. L. 27-019. The Governor signed the new legislation and prepared to issue the bonds. However, under Guam law, Guam’s attorney general must review and approve all government contracts prior to their execution. Guam Code Ann., Tit. 5, § 22601 (1996). The attorney general concluded that issuance of the bonds would raise the Territory’s debt above the level authorized by Guam’s Organic Act. See 48 U. S. C. § 1423a (prohibiting debt “in excess of 10 per centum of the aggregate tax valuation of the property in Guam”). He therefore refused to approve the bond contracts.
*486 In response, the Governor sought a declaration from the Guam Supreme Court that issuance of the authorized bonds would not cause Guam’s debt to exceed the debt limitation. That determination turned, in part, on the meaning of the phrase “aggregate tax valuation” in Guam’s Organic Act. The attorney general calculated the debt limitation as 10 percent of the assessed valuation of property in Guam. But the Governor calculated the debt limitation as 10 percent of the appraised valuation. Because Guam assesses property at 35 percent of its appraised value, Guam Code Ann., Tit. 11, § 24102(f), the attorney general’s interpretation resulted in a much lower debt limit. The Guam Supreme Court agreed with the Governor and held that 48 U. S. C. § 1423a sets the debt limitation at 10 percent of the appraised valuation of property in Guam.
The attorney general filed a petition for certiorari in the United States Court of Appeals for the Ninth Circuit. See §1424-2 (granting Ninth Circuit jurisdiction over appeals from Guam). The Court of Appeals granted the petition in October 2003. While the appeal was pending, Congress amended § 1424-2 and removed the language that vested jurisdiction in the Ninth Circuit over appeals from Guam. See §2, 118 Stat. 2208, 48 U. S. C. § 1424-2 (2000 ed., Supp. IV). In Santos v. Guam, 436 F. 3d 1051 (Jan. 3, 2006), the Court of Appeals addressed the effect of the amendment on its jurisdiction. The court held that Congress had stripped its jurisdiction not only prospectively, but also for pending appeals. Id., at 1054. Citing Santos, the Ninth Circuit dismissed the attorney general’s appeal in this case on March 6, 2006. See App. to Pet. for Cert. 39a.
The attorney general then filed a petition for certiorari in this Court. By statute, certiorari petitions must be filed “within ninety days after the entry of . . . judgment” in a lower court. 28 U. S. C. § 2101(c). The attorney general filed his petition more than 90 days after the judgment from *487 which he appeals — that of the Guam Supreme Court — was entered. Accordingly, when we granted certiorari in this case, 548 U. S. 942 (2006), we directed the parties to address both the question presented by petitioner and whether the filing of a petition for certiorari or the pendency of a writ of certiorari before the Court of Appeals suspended the finality of the Guam Supreme Court’s judgment for purposes of the 90-day period set out in § 2101(c).
II
Only “a genuinely final judgment” will trigger § 2101(c)’s 90-day period for filing a petition for certiorari in this Court. Hibbs v. Winn, 542 U. S. 88, 98 (2004). In most cases, the 90-day period begins to run immediately upon entry of a lower court’s judgment. In some cases, though, the actions of a party or a lower court suspend the finality of a judgment and thereby reset the 90-day “clock.” Ibid. For instance, the timely filing of a petition for rehearing with the lower court or a lower court’s appropriate decision to rehear an appeal may suspend the finality of a judgment by “rads[ing] the question whether the court will modify the judgment and alter the parties’ rights.” Ibid, (citing Missouri v. Jenkins, 495 U. S. 33, 46 (1990)). So long as that question remains open, “‘there is no “judgment” to be reviewed,’” Hibbs, supra, at 98 (quoting Jenkins, supra, at 46), and §2101(c)’s 90-day period does not run.
The same reasoning applies here. In 2003, the Court of Appeals appropriately exercised discretionary jurisdiction over the attorney general’s appeal. See 48 U. S. C. § 1424-2. By granting the petition for certiorari, the Ninth Circuit raised the possibility that it might “modify the judgment” or “alter the parties’ rights.” Hibbs, supra, at 98. Thus, the Court of Appeals’ grant of certiorari suspended the finality of the Guam Supreme Court’s judgment and prevented the 90-day clock from running while the case was pending before *488 the Court of Appeals. And until the Ninth Circuit issued its order dismissing the case, the appeal remained pending, and the finality of the judgment remained suspended.
The Governor argues that the judgment was made final earlier — either when Congress enacted the statute depriving the Court of Appeals of jurisdiction or when the Court of Appeals decided in Santos that the statute applied to pending cases. But when Congress removed the Ninth Circuit’s jurisdiction over appeals from Guam, it did not dismiss this appeal. Likewise, when the Ninth Circuit determined in Santos that Congress had stripped its jurisdiction over pending appeals, the court did not finally determine the rights of the parties in this case. The jurisdiction-stripping statute and Santos may have signaled the Court of Appeals’ ultimate dismissal of the appeal, but neither created a final judgment in the still-pending case. The attorney general’s appeal remained pending until the Ninth Circuit issued its dismissal order. And the pendency of the appeal continued to “raise the question whether” any further action by the court might affect the relationship of the parties. Hibbs, supra, at 98. Accordingly, we hold that the judgment of the Guam Supreme Court did not become final, for purposes of this Court’s review, until the Court of Appeals issued its order dismissing the appeal.
We emphasize that our holding is limited to the unique procedural circumstances presented here. Specifically, our holding does not extend to improperly filed appeals or filings used as delaying tactics. See Morse v. United States, 270 U. S. 151 (1926) (holding that second application for leave to file motion for new trial did not suspend the finality of the lower court’s judgment).
III
Having determined that we have jurisdiction, we turn to the merits. As always, we begin with the text of the statute. See Nebraska Dept, of Revenue v. Loewenstein, 513 U. S. 123, 128 (1994). Guam’s Organic Act states that “no *489 public indebtedness of Guam shall be authorized or allowed in excess of 10 per centum of the aggregate tax valuation of the property in Guam.” 48 U. S. C. § 1423a. The present dispute centers on the meaning of the term “tax valuation.” In its unmodified form, the word “valuation” means “[t]he estimated worth of a thing.” Black’s Law Dictionary 1721 (4th ed. 1951) (hereinafter Black’s). But as the parties’ competing interpretations demonstrate, there are different sorts of valuations. An appraised valuation is the market value of property. See id., at 129 (defining “appraise” as “to fix and state the true value of a thing”). By contrast, an “assessed valuation” is the “[vjalue on each unit of which a prescribed amount must be paid as property taxes.” Id., at 149. These two kinds of valuation are related in practice because a property’s assessed valuation generally equals some percentage of its appraised valuation. See, e. g., Guam Code Ann., Tit. 11, § 24102(f) (defining “value” as “thirty-five per cent (35%) of the appraised value”). The assessed valuation therefore could, but typically does not, equal the market value of the property.
Though it has no established definition, the term “tax valuation” most naturally means the value to which the tax rate is applied.[2] Were it otherwise, the modifier “tax” would have almost no meaning or a meaning inconsistent with ordinary usage. “Tax valuation” therefore means “assessed valuation” — a term consistently defined as a valuation of property for purposes of taxation. See Black’s 149; see also id., at 116 (6th ed. 1990) (defining “assessed valuation” as “[t]he worth or value of property established by taxing authorities on the basis of which the tax rate is applied”).
*490 One would not normally refer to a property’s appraised valuation as its “tax valuation.” Appraised valuation is simply market value. And market value may or may not relate to taxation. Usually market value becomes relevant to taxation only because a specified percentage of market value is the assessed value to which taxing authorities apply the tax rate. It would strain the text to conclude that “tax valuation” means a valuation a step removed from taxation.
The Guam Supreme Court reached a contrary conclusion by interpreting the word “tax” to limit the kinds of property that qualify for inclusion in the debt-limitation calculation. But that interpretation impermissibly rearranges the statutory language. The word “tax” modifies “valuation,” not “property.” The phrase “tax valuation” therefore refers to the type of valuation to be conducted, not the object that is valued.
The Guam Supreme Court also contrasted 48 U. S. C. § 1423a’s language with explicit references to “assessed valuation” in the debt-limitation provision for the Virgin Islands. See § 1403 (“aggregate assessed valuation”). The court reasoned that, by using language in § 1423a that differed from that used in the Virgin Islands’ debt-limitation provision, Congress expressed its intent to base Guam’s debt limitation on something other than assessed value. We disagree. Certainly, Congress could have used the term “assessed valuation.” But if Congress had meant actual, market, or appraised value, it could have used any one of those terms as well. See N. W. Halsey & Co. v. Belle Plaine, 128 Iowa 467, 104 N. W. 494 (1905) (interpreting debt-limitation provision using phrase “actual value”). Or it could have left the word “valuation” unmodified: State courts interpreting other debt-limitation provisions have understood “valuation,” standing alone, to mean the market or cash value of property. See, e. g., Board of Ed., Rich Cty. School Dist. v. Passey, 122 Utah 102, 104-106, 246 P. 2d 1078, 1079 (1952). At least in *491 this context, Congress’ rejection of “assessed” tells us no more than does its rejection of “actual” or “appraised.”
Our interpretation comports with most States’ practice of tying the debt limitations of municipalities to assessed valuation. See 15 É. McQuillin, Law of Municipal Corporations §41:7, p. 422 (3d ed. rev. 2005) (“Most of the constitutional and statutory provisions make the assessed value of the taxable property of the municipality the basis for ascertaining the amount of indebtedness which may be incurred . . . ”). States that depart from the majority approach use clear language to do so. See id., at 424-425 (“The standard is generally the assessed value of the property for taxation, rather than the actual value, where the two are different; but where the constitution or statute uses the term ‘actual value,’ such value governs rather than the taxable value” (citing N. W. Halsey & Co., supra; footnote omitted)). Congress has not used such language here. Indeed, as discussed earlier, only a strained reading of “tax valuation” would suggest a departure from the majority approach.
The Governor suggests that our interpretation would result in no debt limitation at all because Guam may arbitrarily set its assessment rate above 100 percent of market value. For two reasons, we think the Governor has overstated this concern. First, most States have long based their debt limitations on assessed value without incident. Second, a strong political check exists; property-owning voters will not fail to notice if the government sets the assessment rate above market value.
Finally, the Governor mistakenly argues that we owe deference to the Guam Supreme Court’s interpretation of the Organic Act. It may be true that we accord deference to territorial courts over matters of purely local concern. See Pernell v. Southall Realty, 416 U. S. 363,366 (1974) (reviewing District of Columbia Court of Appeals’ interpretation of D. C. Code provision). This case does not fit that mold, however. The debt-limitation provision protects both Guamani *492 ans and the United States from the potential consequences of territorial insolvency. Thus, this case is not a matter of purely local concern. Of course, decisions of the Supreme Court of Guam, as with other territorial courts, are instructive and are entitled to respect when they indicate how statutory issues, including the Organic Act, apply to matters of local concern. On the other hand, the Organic Act is a federal statute, which we are bound to construe according to its terms.
IV
For the foregoing reasons, we reverse the judgment of the Guam Supreme Court and remand the case for proceedings not inconsistent with this opinion.

It is so ordered.

 At the time suit was filed, Douglas Moylan served as Guam’s attorney general. Alicia Limtiaco has since been elected to the position, and she continues the case in Moylan’s place.

 The Guam Legislature passed a law attempting to define the term “tax valuation.” See Guam Code Ann., Tit. 11, §24102/0, available at http:// www.guamcourts.org/justicedocs/index.html (as visited Mar. 16, 2007). But that term appears in Guam’s Organic Act, which is a federal statute. As the Guam Supreme Court correctly determined, Guam’s territorial legislature cannot redefine terms used in a federal statute.