(Slip Opinion)     OCTOBER  TERM,  2006     1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## PERMANENT MISSION OF INDIA TO THE UNITED NATIONS ET AL. *v.* CITY OF NEW YORK

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 06–134.   Argued April 24, 2007—Decided June 14, 2007

Under New York law, real property owned by a foreign government is
exempt from taxation when used exclusively for diplomatic offices or
quarters for ambassadors or ministers plenipotentiary to the United
Nations.  For years, respondent (City) has levied property taxes
against petitioner foreign governments for that portion of their dip-
lomatic office buildings used to house lower level employees and their
families.  Petitioners have refused to pay the taxes.  By operation of
state law, the unpaid taxes converted into tax liens held by the City
against the properties.  The City filed a state-court suit seeking de-
claratory judgments to establish the liens' validity, but petitioners
removed the cases to federal court, where they argued that they were
immune under the Foreign Sovereign Immunities Act of 1976 (FSIA),
which is "the sole basis for obtaining jurisdiction over a foreign state
in federal court," *Argentine Republic* v. *Amerada Hess Shipping
Corp.*, 488 U. S. 428, 439.  The District Court disagreed, relying on an
FSIA exception withdrawing a foreign state's immunity from jurisdic-
tion where "rights in immovable property situated in the United
States are in issue."  28 U. S. C. §1605(a)(4).  The Second Circuit af-
firmed, holding that the "immovable property" exception applied, and
thus the District Court had jurisdiction over the City's suits.

*Held:* The FSIA does not immunize a foreign government from a law-
suit to declare the validity of tax liens on property held by the sover-
eign for the purpose of housing its employees.  Pp. 3–8.

   (a) Under the FSIA, a foreign state is presumptively immune from
suit unless a specific exception applies.  In determining the immov-
able property exception's scope, the Court begins, as always, with the
statute's text.  Contrary to petitioners' position, §1605(a)(4) does not

expressly limit itself to cases in which the specific right at issue is ti-
tle, ownership, or possession, or specifically exclude cases in which a
lien's validity is at issue. Rather, it focuses more broadly on "rights
in" property. At the time of the FSIA's adoption, "lien" was defined
as a "charge or security or incumbrance upon property," Black's Law
Dictionary 1072, and "incumbrance" was defined as "[a]ny right to, or
interest in, land which may subsist in another to the diminution of its
value," *id.,* at 908. New York law defines "tax lien" in accordance
with these general definitions. A lien's practical effects bear out the
definitions of liens as interests in property. Because a lien on real
property runs with the land and is enforceable against subsequent
purchasers, a tax lien inhibits a quintessential property ownership
right—the right to convey. It is thus plain that a suit to establish a
tax lien's validity implicates "rights in immovable property." Pp. 3–5.

(b) This Court's reading is supported by two of the FSIA's related
purposes. First, Congress intended the FSIA to adopt the restrictive
theory of sovereign immunity, which recognizes immunity "with re-
gard to sovereign or public acts *(jure imperii)* of a state, but not . . .
private acts *(jure gestionis)*." *Alfred Dunhill of London, Inc.* v. *Repub-
lic of Cuba*, 425 U. S. 682, 711. Property ownership is not an inher-
ently sovereign function. The FSIA was also meant to codify the real
property exception recognized by international practice at the time of
its enactment. That practice supports the City's view that petitioners
are not immune, as does the contemporaneous restatement of foreign
relations law. The Vienna Convention on Diplomatic Relations, on
which both parties rely, does not unambiguously support either
party, and, in any event, does nothing to deter this Court from its in-
terpretation. Pp. 5–8.

446 F. 3d 365, affirmed and remanded.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and SCALIA, KENNEDY, SOUTER, GINSBURG, and ALITO, JJ., joined.
STEVENS, J., filed a dissenting opinion, in which BREYER, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–134

THE PERMANENT MISSION OF INDIA TO THE UNITED NATIONS, ET AL., PETITIONERS *v.* CITY OF NEW YORK, NEW YORK

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[June 14, 2007]

JUSTICE THOMAS delivered the opinion of the Court.

The Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U. S. C. §1602 *et seq.,* governs federal courts' jurisdiction in lawsuits against foreign sovereigns. Today, we must decide whether the FSIA provides immunity to a foreign sovereign from a lawsuit to declare the validity of tax liens on property held by the sovereign for the purpose of housing its employees. We hold that the FSIA does not immunize a foreign sovereign from such a suit.

I

The Permanent Mission of India to the United Nations is located in a 26-floor building in New York City that is owned by the Government of India. Several floors are used for diplomatic offices, but approximately 20 floors contain residential units for diplomatic employees of the mission and their families. The employees—all of whom are below the rank of Head of Mission or Ambassador—are Indian citizens who receive housing from the mission rent free.

Similarly, the Ministry for Foreign Affairs of the Peo-

ple's Republic of Mongolia is housed in a six-story building in New York City that is owned by the Mongolian Government. Like the Permanent Mission of India, certain floors of the Ministry Building include residences for lower level employees of the Ministry and their families.

Under New York law, real property owned by a foreign government is exempt from taxation if it is "used exclusively" for diplomatic offices or for the quarters of a diplomat "with the rank of ambassador or minister plenipotentiary" to the United Nations. N. Y. Real Prop. Tax Law Ann. §418 (West 2000). But "[i]f a portion only of any lot or building . . . is used exclusively for the purposes herein described, then such portion only shall be exempt and the remainder shall be subject to taxation . . . ." *Ibid.*

For several years, the City of New York (City) has levied property taxes against petitioners for the portions of their buildings used to house lower level employees. Petitioners, however, refused to pay the taxes. By operation of New York law, the unpaid taxes eventually converted into tax liens held by the City against the two properties. As of February 1, 2003, the Indian Mission owed about $16.4 million in unpaid property taxes and interest, and the Mongolian Ministry owed about $2.1 million.

On April 2, 2003, the City filed complaints in state court seeking declaratory judgments to establish the validity of the tax liens.[1] Petitioners removed their cases to federal

——————

[1] The City concedes that even if a court of competent jurisdiction declares the liens valid, petitioners are immune from foreclosure proceedings. See Brief for Respondent 40 (noting that there is no FSIA immunity exception for enforcement actions). The City claims, however, that the declarations of validity are necessary for three reasons. First, once a court has declared property tax liens valid, foreign sovereigns traditionally concede and pay. Second, if the foreign sovereign fails to pay in the face of a valid court judgment, that country's foreign aid may be reduced by the United States by 110% of the outstanding debt. See Foreign Operations, Export Financing, and Related Programs Appropriations Act, 2006, §543(a), 119 Stat. 2214 (hereinafter Foreign Opera-

court, pursuant to 28 U. S. C. §1441(d), which provides for removal by a foreign state or its instrumentality. Once there, petitioners argued that they were immune from the suits under the FSIA's general rule of immunity for foreign governments. §1604. The District Court disagreed, relying on the FSIA's "immovable property" exception, which provides that a foreign state shall not be immune from jurisdiction in any case in which "rights in immovable property situated in the United States are in issue." §1605(a)(4).

Reviewing the District Court's decision under the collateral order doctrine, a unanimous panel of the Court of Appeals for the Second Circuit affirmed. 446 F. 3d 365 (2006). The Court of Appeals held that the text and purpose of the FSIA's immovable property exception confirmed that petitioners' personal property tax obligations involved "rights in immovable property." It therefore held that the District Court had jurisdiction to consider the City's suits. We granted certiorari, 549 U. S. \_\_\_ (2007), and now affirm.

## II

"[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic* v. *Amerada Hess Shipping Corp.*, 488 U. S. 428, 439 (1989). Under the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies. §1604; *Saudi Arabia* v. *Nelson*, 507 U. S. 349, 355 (1993). At issue here is the scope of the exception where "rights in immovable property situated in the United States are in issue." §1605(a)(4). Petitioners contend that the language "rights in immovable property" limits the

_____

tions); Consolidated Appropriations Act of 2005, §543(a), 118 Stat. 3011 (hereinafter Consolidated Appropriations). Third, the liens would be enforceable against subsequent purchasers. 5 Restatement of Property §540 (1944).

reach of the exception to actions contesting ownership or possession. The City argues that the exception encompasses additional rights in immovable property, including tax liens. Each party claims international practice at the time of the FSIA's adoption supports its view. We agree with the City.

A

We begin, as always, with the text of the statute. *Limtiaco* v. *Camacho*, 549 U. S. ___, ___ (2007) (slip op., at 5). The FSIA provides: "A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . in which . . . rights in immovable property situated in the United States are in issue." 28 U. S. C. §1605(a)(4). Contrary to petitioners' position, §1605(a)(4) does not expressly limit itself to cases in which the specific right at issue is title, ownership, or possession. Neither does it specifically exclude cases in which the validity of a lien is at issue. Rather, the exception focuses more broadly on "rights in" property. Accordingly, we must determine whether an action seeking a declaration of the validity of a tax lien places "rights in immovable property . . . in issue."

At the time of the FSIA's adoption in 1976, a "lien" was defined as "[a] charge or security or incumbrance upon property." Black's Law Dictionary 1072 (4th ed. 1951). "Incumbrance," in turn, was defined as "[a]ny right to, or interest in, land which may subsist in another to the diminution of its value . . . ." *Id.,* at 908; see also *id.,* at 941 (8th ed. 2004) (defining "lien" as a "legal right or interest that a creditor has in another's property"). New York law defines "tax lien" in accordance with these general definitions. See N. Y. Real Prop. Tax Law Ann. §102(21) (West Supp. 2007) ("'Tax lien' means an unpaid tax . . . which is an encumbrance of real property . . ."). This Court, interpreting the Bankruptcy Code, has also

recognized that a lienholder has a property interest, albeit a "nonpossessory" interest. *United States* v. *Security Industrial Bank*, 459 U. S. 70, 76 (1982).

The practical effects of a lien bear out these definitions of liens as interests in property. A lien on real property runs with the land and is enforceable against subsequent purchasers. See 5 Restatement of Property §540 (1944). As such, "a lien has an immediate adverse effect upon the amount which [could be] receive[d] on a sale, . . . constitut[ing] a direct interference with the property . . . ." *Republic of Argentina* v. *New York*, 25 N. Y. 2d 252, 262, 250 N. E. 2d 698, 702 (1969). A tax lien thus inhibits one of the quintessential rights of property ownership—the right to convey. It is therefore plain that a suit to establish the validity of a lien implicates "rights in immovable property."

### B

Our reading of the text is supported by two well-recognized and related purposes of the FSIA: adoption of the restrictive view of sovereign immunity and codification of international law at the time of the FSIA's enactment. Until the middle of the last century, the United States followed "the classical or virtually absolute theory of sovereign immunity," under which "a sovereign cannot, without his consent, be made a respondent in the courts of another sovereign." Letter from Jack B. Tate, Acting Legal Adviser, U. S. Dept. of State, to Acting U. S. Attorney General Phillip B. Perlman (May 19, 1952) (Tate Letter), reprinted in 26 Dept. of State Bull. 984 (1952), and in *Alfred Dunhill of London, Inc.* v. *Republic of Cuba*, 425 U. S. 682, 711, 712 (1976) (App. 2 to opinion of the Court). The Tate Letter announced the United States' decision to join the majority of other countries by adopting the "restrictive theory" of sovereign immunity, under which "the immunity of the sovereign is recognized with

regard to sovereign or public acts *(jure imperii)* of a state, but not with respect to private acts *(jure gestionis)*." *Id.,* at 711. In enacting the FSIA, Congress intended to codify the restrictive theory's limitation of immunity to sovereign acts. *Republic of Argentina* v. *Weltover, Inc.*, 504 U. S. 607, 612 (1992); *Asociacion de Reclamantes* v. *United Mexican States,* 735 F. 2d 1517, 1520 (CADC 1984) (Scalia, J.).

As a threshold matter, property ownership is not an inherently sovereign function. See *Schooner Exchange* v. *McFaddon*, 7 Cranch 116, 145 (1812) ("A prince, by acquiring private property in a foreign country, may possibly be considered as subjecting that property to the territorial jurisdiction, he may be considered as so far laying down the prince, and assuming the character of a private individual"). In addition, the FSIA was also meant "to codify . . . the pre-existing real property exception to sovereign immunity recognized by international practice." *Reclamantes, supra*, at 1521 (Scalia, J.). Therefore, it is useful to note that international practice at the time of the FSIA's enactment also supports the City's view that these sovereigns are not immune. The most recent restatement of foreign relations law at the time of the FSIA's enactment states that a foreign sovereign's immunity does not extend to "an action to obtain possession of or establish a property interest in immovable property located in the territory of the state exercising jurisdiction." Restatement (Second) of Foreign Relations Law of the United States §68(b), p. 205 (1965). As stated above, because an action seeking the declaration of the validity of a tax lien on property is a suit to establish an interest in such property, such an action would be allowed under this rule.

Petitioners respond to this conclusion by citing the second sentence of Comment *d* to §68, which states that the rule "does not preclude immunity with respect to a claim arising out of a foreign state's ownership or posses-

sion of immovable property but not contesting such owner-
ship or the right to possession." *Id.,* at 207. According to
petitioners, that sentence limits the exception to cases
contesting ownership or possession. When read in context,
however, the comment supports the City. Petitioners
ignore the first sentence of the comment, which reempha-
sizes that immunity does not extend to cases involving the
possession of or "interest in" the property. *Ibid.* And the
illustrations following the comment make clear that it
refers only to claims incidental to property ownership,
such as actions involving an "injury suffered in a fall" on
the property, for which immunity would apply. *Id.,* at 208.
By contrast, for an eminent-domain proceeding, the for-
eign sovereign could not claim immunity. *Ibid.* Like the
eminent-domain proceeding, the City's lawsuits here
directly implicate rights in property.

   In addition, both parties rely on various international
agreements, primarily the Vienna Convention on Diplo-
matic Relations, Apr. 18, 1961, [1972] 23 U. S. T. 3227,
T. I. A. S. No. 7502, to identify pre-FSIA international
practice. Petitioners point to the Vienna Convention's
analogous withholding of immunity for "a real action
relating to private immovable property situated in the
territory of the receiving State, unless [the diplomatic
agent] holds it on behalf of the sending State for the pur-
poses of the mission." *Id.,* at 3240, Art. 31(1)(a). Petition-
ers contend that this language indicates they are entitled
to immunity for two reasons. First, petitioners argue that
"real action[s]" do not include actions for performance of
obligations "'deriving from ownership or possession of
immovable property.'" Brief for Petitioners 28 (quoting E.
Denza, Diplomatic Law: A Commentary on the Vienna
Convention on Diplomatic Relations 238 (2d ed. 1998);
emphasis deleted). Second, petitioners assert that the
property here is held "'on behalf of the sending State for
purposes of the Mission.'" Brief for Petitioners 28.

But as the City shows, it is far from apparent that the term "real action"—a term derived from the civil law—is as limited as petitioners suggest. See *Chateau Lafayette Apartments, Inc.* v. *Meadow Brook Nat. Bank*, 416 F. 2d 301, 304, n. 7 (CA5 1969). Moreover, the exception for property held "on behalf of the sending State" concerns only the case—not at issue here—where local law requires an agent to hold in his own name property used for the purposes of a mission. 1957 Y. B. Int'l L. Comm'n 94–95 (402d Meeting, May 22, 1957); see also *Deputy Registrar Case*, 94 I. L. R. 308, 313 (D. Ct. The Hague 1980). Other tribunals construing Article 31 have also held that it does not extend immunity to staff housing. See *id.,* at 312; cf. *Intpro Properties (U. K.) Ltd.* v. *Sauvel*, [1983] 1 Q. B. 1019, 1032–1033.

In sum, the Vienna Convention does not unambiguously support either party on the jurisdictional question.[2] In any event, nothing in the Vienna Convention deters us from our interpretation of the FSIA. Under the language of the FSIA's exception for immovable property, petitioners are not immune from the City's suits.

### III

Because the statutory text and the acknowledged purposes of the FSIA make it clear that a suit to establish the validity of a tax lien places "rights in immovable property . . . in issue," we affirm the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

_____

[2] The City offers several other arguments against immunity based on the Vienna Convention, but those arguments ultimately go to the merits of the case, *i.e.*, whether petitioners are actually responsible for paying the taxes. Because the only question before us is one of jurisdiction, and because the text and historical context of the FSIA demonstrate that petitioners are not immune from the City's suits, we leave these merits-related arguments to the lower courts.

# SUPREME COURT OF THE UNITED STATES

———————

No. 06–134

———————

## THE PERMANENT MISSION OF INDIA TO THE UNITED NATIONS, ET AL., PETITIONERS *v.* CITY OF NEW YORK, NEW YORK

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[June 14, 2007]

JUSTICE STEVENS, with whom JUSTICE BREYER joins, dissenting.

Diplomatic channels provide the normal method of resolving disputes between local governmental entities and foreign sovereigns. See *Schooner Exchange* v. *McFaddon*, 7 Cranch 116, 146 (1812). Following well-established international practice, American courts throughout our history have consistently endorsed the general rule that foreign sovereigns enjoy immunity from suit in our courts. See *Verlinden B. V.* v. *Central Bank of Nigeria*, 461 U. S. 480, 486 (1983); *Nevada* v. *Hall*, 440 U. S. 410, 417 (1979). The fact that the immunity is the product of comity concerns rather than a want of juridical power, see *Verlinden B. V.*, 461 U. S., at 486, does not detract from the important role that it performs in ordering our affairs.

The Foreign Sovereign Immunities Act of 1976 (FSIA) both codified and modified that basic rule. The statute confirms that sovereigns are generally immune from suit in our courts, 28 U. S. C. §1604, but identifies seven specific exceptions through which courts may accept jurisdiction, §1605(a). None of those exceptions pertains, or indeed makes any reference, to actions brought to establish a foreign sovereign's tax liabilities. Because this is such

an action, I think it is barred by the general rule codified in the FSIA.

It is true that the FSIA contains an exception for suits to resolve disputes over "rights in immovable property," §1605(a)(4), and New York City law provides that unpaid real estate taxes create a lien that constitutes an interest in such property, N. Y. C. Admin. Code §11–301 (Cum. Supp. 2006). It follows that a literal application of the FSIA's text provides a basis for applying the exception to this case. See *ante*, at 4–5. Given the breadth and vintage of the background general rule, however, it seems to me highly unlikely that the drafters of the FSIA intended to abrogate sovereign immunity in suits over property interests whose primary function is to provide a remedy against delinquent taxpayers.

Under the majority's logic, since "a suit to establish the validity of a lien implicates 'rights in immovable property,'" *ante*, at 5, whenever state or municipal law recognizes a lien against a foreign sovereign's real property, the foreign government may be haled into federal court to litigate the validity of that lien. Such a broad exception to sovereign immunity threatens, as they say, to swallow the rule. Under the municipal law of New York City, for example, liens are available against real property, among other things, to compel landowners to pay for pest control, emergency repairs, and sidewalk upkeep. See N. Y. C. Admin. Code §§17–145, 17–147, 17–151(b) (2000); see also M. Mitzner, Liens and Encumbrances, in Real Estate Titles 299, 311–314 (J. Pedowitz ed. 1984). A whole host of routine civil controversies, from sidewalk slip-and-falls to landlord-tenant disputes, could be converted into property liens under local law, and then used—as the tax lien was in this case—to pierce a foreign sovereign's traditional and statutory immunity. In order to reclaim immunity, foreign governments might argue in those cases—just as the Governments of India and the People's Republic of

Mongolia tried to argue here—that slip-and-fall claims, even once they are transformed into property liens, do not implicate "rights in immovable property." But the burden of answering such complaints and making such arguments is itself an imposition that foreign sovereigns should not have to bear.

The force of the arguments of the Solicitor General as *amicus curiae* supporting petitioners buttresses my conviction that a narrow reading of the statutory exception is more faithful to congressional intent than a reading that enables a dispute over taxes to be classified as a dispute over "rights in immovable property." It is true that insofar as the FSIA transferred the responsibility for making immunity decisions from the State Department to the Judiciary, *Verlinden B. V.*, 461 U. S., at 487–488, the views of the Executive are not entitled to any special deference on this issue. But we have recognized that well-reasoned opinions of the Executive Branch about matters within its expertise may have the "power to persuade, if lacking power to control." *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140 (1944).

And I am persuaded. At bottom, this case is not about the validity of the city's title to immovable property, or even the validity of its automatic prejudgment lien. Rather, it is a dispute over a foreign sovereign's tax liability. If Congress had intended the statute to waive sovereign immunity in tax litigation, I think it would have said so.

Accordingly, I respectfully dissent.