**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 16-3912

—————

VICTORIA VOOYS, JOSEPH GERACE
d/b/a CANE BAY BEACH BAR

v.

MARIA BENTLEY; CB3, INC.; WARREN MOSLER;
CHRIS HANLEY; CHRISMOS CANE BAY, LLC

Warren Mosler; Chris Hanley; Chrismos Cane Bay, LLC,

Petitioners

—————

ON WRIT OF CERTIORARI TO
THE SUPREME COURT OF THE VIRGIN ISLANDS
(V.I. S. Ct. Civ. No. 2015-0046)
(V.I. Super. Ct. Civ. No. 2005-00368)

—————

Argued December 12, 2017 before Merits Panel
Argued En Banc February 21, 2018

—————

Before: SMITH, *Chief Judge*, MCKEE, AMBRO,
CHAGARES, JORDAN, HARDIMAN, GREENAWAY, JR.,
VANASKIE, SHWARTZ, KRAUSE, RESTREPO, BIBAS,
and SCIRICA,[*] *Circuit Judges*.

(Filed: August 21, 2018)

—————

[*] Participating as a member of the En Banc Court
Pursuant to 3rd Cir. I.O.P. 9.6.4.

Lee J. Rohn, Esq.
Rhea R. Lawrence, Esq. [ARGUED]
Lee J. Rohn & Associates, LLC
1101 King Street
Christiansted, VI 00820
    *Counsel for Plaintiffs-Respondents*

Stephen L. Braga, Esq.
Laura Cooley (*Third Year Law Student*) [ARGUED]
Tanner Russo (*Third Year Law Student*) [ARGUED]
Alaric Smith (*Third Year Law Student*)
Cole A. Wogoman (*Third Year Law Student*)
University of Virginia School of Law
Appellate Litigation Clinic
580 Massie Road
Charlottesville, VA 22903-1789
    *Counsel for Defendants-Petitioners*

Dwyer Arce, Esq. [ARGUED]
Kutak Rock
1650 Farnam Street
The Omaha Building
Omaha, NE 68102

Edward L. Barry, Esq.
Law Offices of Edward L. Barry
2120 Company Street
Christiansted, VI 00820

John-Russell B. Pate, Esq.
The Pate Law Firm
P.O. Box 890
St. Thomas, VI 00804
    *Counsel for Amicus Curiae Virgin Islands Bar Association*

Andrew C. Simpson, Esq.
Andrew C. Simpson Law Offices
2191 Church Street, Suite 5
Christiansted, VI 00820
    *Counsel for Amicus Curiae Companion Assurance Company*

---

OPINION

---

McKEE, *Circuit Judge*

We are asked to grant certiorari review of a decision of the Supreme Court of the Virgin Islands that reinstated contractual claims that arose from the sale of a bar in the islands. The Superior Court of the Virgin Islands dismissed the suit in April of 2015 based on Plaintiffs' failure to post a security bond. The Supreme Court of the Virgin Islands thereafter reversed that decision and reinstated the suit based upon its conclusion that the provision of Virgin Islands law allowing a court to order nonresident plaintiffs to post such a bond violated the Privileges and Immunities Clause of the U.S. Constitution.

Defendants now ask us to reverse the Supreme Court of the Virgin Islands pursuant to our certiorari authority to review that court's final decisions. Congress enacted H.R. 6116 in order to revoke that authority for all "cases commenced on or after" December 28, 2012.[1] We must decide whether "cases," as used in H.R. 6116, was intended to apply to all suits initiated in the Superior Court of the Virgin Islands, the court of original jurisdiction, or whether it was intended to apply to appeals from final decisions of the Supreme Court of the Virgin Islands that were filed on or after that date irrespective of when the suit was filed.

We previously addressed this issue in *United Industrial Service, Transportation, Professional and Government Workers of North America Seafarers International Union ex rel. Bason v. Government of the Virgin Islands.*[2] We have

---

[1] Act of Dec. 28, 2012, Pub. L. No. 112-226, 126 Stat. 1606 (codified at 48 U.S.C. § 1613 and 28 U.S.C. § 1260) [hereinafter *H.R. 6116*].

[2] *United Indus., Serv., Transp., Prof'l & Gov't Workers of N. Am. Seafarers Int'l Union ex rel. Bason v. Gov't of the Virgin Islands*, 767 F.3d 193 (3d Cir. 2014) [hereinafter *Bason*].

3

granted initial hearing en banc in this matter to revisit the jurisdictional issue we decided in *Bason*. For the reasons set forth below, we now conclude that *Bason* incorrectly interpreted H.R. 6116 as referring to suits filed in the Superior Court of the Virgin Islands on or after December 28, 2012. We now hold that Congress intended for the effective date for H.R. 6116 to apply to the date an appeal from a final decision of the Virgin Islands Supreme Court is filed and not to the date a suit is filed in the Superior Court. Since the petition in this matter was filed after the effective date of H.R. 6116, we hold that we lack jurisdiction to hear this appeal. Accordingly, we will dismiss the petition for certiorari review.[3]

## I. BACKGROUND
### A. Factual and Procedural History

In 2003, Plaintiffs Joseph Gerace and Victoria Vooys purchased Cane Bay Beach Bar, which is situated on the island of St. Croix, U.S. Virgin Islands. In 2005, they sued Defendants Warren Mosler, Chris Hanley, Chrismos Cane Bay LLC, and others in the Superior Court of the Virgin Islands for breach of contract and other claims related to the sale of that business. Plaintiffs resided in the U.S. Virgin Islands from the time they filed their suit until the fall of 2012, when they moved to the U.S. mainland. Their suit was still pending when they relocated. Upon learning that Plaintiffs were no longer Virgin Islands residents, Defendants petitioned the Superior Court for an order requiring Plaintiffs to post a security bond for potential costs pursuant to title 5, section 547 of the Virgin Islands Code.[4] That provision allows defendants to demand that nonresident plaintiffs post a bond to cover potential costs of litigation and allows a court to stay litigation until the bond

---

[3] Although we conclude that we lack jurisdiction to review the decision of the Supreme Court of the Virgin Islands in this matter, we clearly have jurisdiction to decide the underlying question of our jurisdiction. *See Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940) (Federal courts have authority "to determine whether or not they have jurisdiction to . . . construe and apply the statute under which they are asked to act.").

[4] V.I. Code Ann. tit. 5, § 547.

4

is paid.[5]  The court granted Defendants' request in April of 2013 and ordered Plaintiffs to post a bond of $1,050 each within thirty days of the order.

Defendants moved to dismiss after Plaintiffs failed to meet that deadline.[6]  Plaintiffs vehemently opposed the motion, arguing, inter alia, that the Virgin Islands nonresident bond provision was unconstitutional.  In April 2015—almost three years after H.R. 6116 became law—the Superior Court rejected Plaintiffs' challenge to the constitutionality of the nonresident bond requirement and dismissed the suit.

Plaintiffs appealed to the Supreme Court of the Virgin Islands.  In August 2016, that court reversed the decision of the Superior Court and reinstated the complaint.  Defendants appealed that decision to this Court and we granted certiorari review in March of 2017.  However, after a panel of this Court heard the parties' arguments on the merits, we issued a sua sponte order for initial hearing en banc to reexamine whether Congress intended us to retain certiorari jurisdiction over appeals filed after the effective date of H.R. 6116.

We now hold that our certiorari jurisdiction to review decisions of the Supreme Court of the Virgin Islands does not extend to any appeal that was filed on or after the date that H.R. 6116 became law.  Before we discuss the merits of that jurisdictional issue, we will place our decision into its historical context and explain the evolution of our relationship to the Virgin Islands judicial system.

### B. Historical Background

### 1. Virgin Islands Courts and the Third Circuit's Certiorari Jurisdiction

In 1917, the United States purchased what was then the Danish West Indies from Denmark "in exchange for $25 million in gold and American recognition of Denmark's claim to Greenland."[7]  Judicial oversight of what became the U.S.

---

[5] *Id.* § 547(a).

[6] *See id.* § 547(d) (enabling court to dismiss an action upon nonpayment of bond).

[7] Robert M. Jarvis, *"A Peculiar Niche": Admiralty Law in the United States Virgin Islands*, 26 J. Mar. L. & Com. 157, 160 (1995); *see* Convention for Cessation of the Danish

West Indies, U.S.-Den., Aug. 4, 1916, 39 Stat. 1706. A series of natural, political and social events had made the islands much less attractive and less valuable to Denmark. These included the introduction of steam vessels that no longer needed to "tranship at [St.] Thomas," a "precipitous fall in global sugar prices, . . . droughts, [the] development of the sugar beet in Europe, and an unusually large number of hurricanes." Jarvis, *supra*, at 160. The islands also lost much of their commercial value with the end of slavery. "Although Denmark banned slavery in 1802 . . . , it was not until July 3, 1848 that [the Governor-General of the Danish West Indies] freed the islands' slaves" on what is now celebrated in the Virgin Islands as Emancipation Day. *Id.* at 160 n.12.

Yet while the plan to purchase the Virgin Islands was formulated in 1916, official acquisition came after a long and arduous back-and-forth on the part of the U.S. Government. It began with Secretary of State William H. Seward signing a treaty with Denmark in 1867 for the purchase of St. Thomas and St. John. *Id.* at 160 n.13. Thereafter, the island of St. Thomas was flooded by a "tremendous tidal wave," "[a] terrible earthquake shook it," and opposition to the islands' acquisition grew "after the ratification of the Alaska purchase, [which] added to the avalanche of objections" from Congress. *Id.* However, the Danish Government was now "[s]o anxious" to consummate the sale that it was "ready to add the remaining island of [St. Croix] at a nominal price." *Id.*

> Much discussion, formal and informal, finally resulted in the signature of a Danish-American treaty (January 24, 1902) for the purchase of the islands for $5,000,000. . . . [T]he Senate readily ratified the treaty, but the upper house of the Danish Parliament rejected it by one vote. It was not until 1917 that both governments were able to exchange ratifications of a treaty of purchase; by then, in the atmosphere of war, the price had gone up to the exorbitant figure of $25,000,000.

6

Virgin Islands was promptly assigned to the Court of Appeals for the Third Circuit by the Act of March 3, 1917.[8] The pertinent provision—consisting of a mere thirty-five words—provided: "In all cases arising in the . . . West Indian Islands and now reviewable by the courts of Denmark, writs of error and appeals shall be to the Circuit Court of Appeals for the Third Circuit . . . ."[9]

Now home to a population of around 100,000, the U.S. Virgin Islands became an unincorporated American territory in 1954.[10] However, the evolution of the islands' legal system and its relationship to the Third Circuit date back much further and are the result of numerous enactments by both the U.S. Congress and the Virgin Islands legislature.[11]

Professor Robert M. Jarvis, who has extensively studied the history of the Virgin Islands, has authored a detailed explanation for how we obtained jurisdiction over

---

*Id.* at 161 n.13 (quoting S. Bemis, *A Diplomatic History of the United States* 399-403, 521 (3d ed. 1950)).

[8] Act of March 3, 1917, Pub. L. No. 64-389, ch. 171, § 2, 39 Stat. 1132, 1133 (current version at 48 U.S.C. § 1392).

[9] *Id.*

[10] Revised Organic Act, Pub. L. No. 83-517, ch. 558, § 2, 68 Stat. 497 (1954) (codified as amended at 48 U.S.C. § 1541(a)). An unincorporated territory is one that is not nearing statehood and whose subjects do not enjoy full constitutional guarantees. *Gov't of Virgin Islands v. Bodle*, 427 F.2d 532, 533 n.1 (3d Cir. 1970). For example, Virgin Islands residents are not permitted to vote in presidential elections, although they are U.S. citizens. *Ballentine v. United States*, 486 F.3d 806, 811 (3d Cir. 2007). They are represented in Congress by a single non-voting delegate. 48 U.S.C. § 1711.

[11] For a thorough history of Virgin Islands governance from 1906, while they were still a colony of Denmark, to Congress's enactment of the legislation establishing the framework for modern Virgin Islands governance, see the opinion of U.S. District Court Judge Thomas K. Moore in *Ballentine v. United States*, No. Civ. 1999-130, 2001 WL 1242571, at *1-7 (D.V.I. Oct. 15, 2001).

the islands' courts.[12]  According to Professor Jarvis, officials in the U.S. Bureau of Insular Affairs originally "felt that the issue of the USVI appeals should be dealt with *after* the purchase of the islands was complete."[13]  The Bureau's Chief, Brigadier General Frank McIntyre, so testified before the Foreign Affairs Committee of the U.S. House of Representatives in 1917:

> The Chairman:  What courts have they?
>
> Gen. McIntyre:  The courts are very simple.  In all the higher cases they have now a provision for appeal to Denmark.  For instance

---

[12] *See* Jarvis, *supra* note 6, at 166 n.38.  Despite numerous inquiries that have been made into the issue, Professor Jarvis admits that the "question of why the Third Circuit, which sits in Philadelphia, was chosen is one that has baffled historians for years." *Id.*  However, the most probable explanation is that Delaware Senator Willard Saulsbury, Jr., inserted the language assigning the Virgin Islands to the Third Circuit at the last minute. Senator Saulsbury chaired the Committee on Coast and Insular Survey as well as the Committee on Pacific Islands and Puerto Rico.  *Id.* at 167 n.38.  His "position put him in line to greatly influence the final wording of any bill.  Accordingly, it is very easy to believe that when it came time to decide what to do about appeals from the islands[,] Saulsbury was consulted and, as [Judge Albert Maris of the Third Circuit] suggests, [Saulsbury] recommended the Third Circuit as the best alternative available." *Id.*

As Professor Jarvis explains, "Saulsbury would have been comfortable proposing the Third Circuit," as "he had tried several cases before the court, including a difficult admiralty appeal." *Id.*  In any event, the timing of the insertion of the pertinent language—immediately before Easter recess—and the brevity of the key provision reinforces the argument that Senator Saulsbury could have provided for appeals to the Third Circuit with very little fanfare or notice. *See infra* note 17.

[13] Jarvis, *supra* note 6, at 166 n.38.

the sheriff also exercises the office of judge. They have very few cases that go to Denmark.

Mr. [William S.] Goodwin [D-Ark.]: Are the decrees of the courts in English?

Gen. McIntyre: The records of the courts are written in Danish, and one of the difficulties is that most of the laws are in Danish. A great many of them have not been translated.

The Chairman: It is necessary for us to make some provision for appeals?

Gen. McIntyre: I think not, because, I think, the proposition is simple, and I think that matter can be handled later after there has been a study and report on just exactly what you need.

The Chairman: And this bill gives the President the necessary authority?

Gen. McIntyre: Yes, sir.[14]

However, despite General McIntyre's expressed desire to delay resolution of the issue of judicial oversight over the newly acquired islands, the move to grant the Court of Appeals for the Third Circuit that authority was accomplished quickly and by insertion of the above-quoted thirty-five words into the legislation.[15] The legislation was passed less than three weeks after General McIntyre testified.[16]

---

[14] *Id.* (quoting *Cession of Danish West Indian Islands: Hearings on H.R. 20755 Before the Comm. on Foreign Affairs*, 64th Cong. 33 (1917) (testimony of Brigadier Gen. Frank McIntyre, Chief of U.S. Bureau of Insular Affairs)). For a thorough discussion of the political structure of the Virgin Islands under Danish rule, see *Ballentine*, 2001 WL 1242571, at *1-4.

[15] Jarvis, *supra* note 6, at 166 n.38; *see* Act of March 3, 1917, ch. 171, § 2, 39 Stat. at 1133 (vesting Third Circuit with judicial authority over Virgin Islands cases).

[16] Jarvis, *supra* note 6, at 166 n.38.

For Congress, the choice of the Third Circuit may have been much less puzzling then than it appears to be today.

> The First Circuit already was supervising Puerto Rico. The Second Circuit's docket was overwhelmed with cases from New York. The Fourth Circuit, with only two authorized judges, had been considered short-handed for years. The Fifth Circuit, although geographically the closest circuit to the islands, was handling appeals from the District Court in the Panama Canal Zone. . . . [T]he remaining circuits . . . were simply too distant to provide effective oversight. As such, Congress probably felt that there was no reason to wait for the results of the [study General McIntyre suggested be undertaken of the Virgin Islands courts] when the conclusion [Congress] was likely to draw was already clear.[17]

Moreover, resolution of the issue was no doubt facilitated by the fact that the legislation was introduced on the eve of a congressional recess.[18] As Professor Jarvis explains, "[t]o the extent that Congress considered the matter . . . , the Third Circuit probably seemed like the logical choice."[19] That choice was likely also informed by geographic practicality. With Philadelphia as its seat, judges of the Third Circuit could easily travel to the Virgin Islands, which in those days could be reached by steamer from

---

[17] Jarvis, *supra* note 6, at 167 n.38. In addition, the Eleventh Circuit did not yet exist. It was not established until nearly fifty years later, in 1981. Fifth Circuit Court of Appeals Reorganization Act of 1980, Pub. L. No. 96-452, § 2, 94 Stat. 1994, 1994 (codified as amended at 28 U.S.C. § 41).

[18] Jarvis, *supra* note 6, at 166-67 n.38. The bill to assign the Virgin Islands to the Third Circuit came up on March 3, 1917, just one day before the adjournment of the 64th Congress on March 4, 1917. *See* Act of March 3, 1917, ch. 171, § 2, 39 Stat. at 1133.

[19] Jarvis, *supra* note 6, at 166-67 n.38.

neighboring New York.[20, 21]

---

[20] *Id.* at 167 n.38 (citing Interview with Albert B. Maris, Circuit Judge, Third Circuit Court of Appeals (Apr. 18, 1984) (transcript available from the Federal Judicial Center)).  It is almost certain that there was not great competition for authority over any aspect of the Virgin Islands.  The islands were not easy to reach for most circuit courts of appeals and they were not yet economically developed.  Jarvis, *supra* note 6, at 168 n.38. "[D]uring the early years of American rule[,] conditions actually worsened, and in 1928 a devastating hurricane swept over the islands." *Id.*

More critically, the judicial system in the Virgin Islands was considered to be "archaic." *A Bill to Provide a Civil Government for the Virgin Islands, and for Other Purposes: Hearings on S. 2786 Before the S. Comm. on Territories and Insular Possessions*, 68th Cong. 6 (1924) [hereinafter *1924 Senate Hearings*] (statement of A. A. Berle, Jr., Counsel for the Virgin Islands Committee and the Virgin Islands branch of the American Federation of Labor).  It had been based on "an old Danish system, which even the Danes were about to revise." *Id.*  Accordingly, any move by Senator Saulsbury to place the judicial oversight of the Virgin Islands close to his home state of Delaware would have been met with much more apathy than opposition, and perhaps no small amount of relief.

This began to change when Albert B. Maris was appointed to the Third Circuit.  He "was keenly interested" in the Virgin Islands and helped draft the Revised Organic Act, which is discussed below.  Jarvis, *supra* note 6, at 168 n.38; *see infra* note 26 and accompanying text.  Thereafter, he "oversaw the effort to codify the islands' laws" and subsequently received the Virgin Islands Medal of Honor for his work improving and modernizing the Virgin Islands legal system.  Jarvis, *supra* note 6, at 168 n.38.

The relationship between the Third Circuit and the Virgin Islands grew even stronger when President Truman appointed William H. Hastie to our Court.  Hastie had been governor of the Virgin Islands and was thereafter appointed to

the District Court of the Virgin Islands. With that appointment, he became the first African-American judge of a federal district court. When President Truman appointed him to the Court of Appeals for the Third Circuit, he then became the first African-American judge of a federal circuit court of appeals. Given his service as a Virgin Islands governor and judge, "Hastie was well aware of the problems faced by the islands' fledgling legal system. Thus, throughout his time on the Third Circuit (1949-76), Hastie sought to bring the [C]ourt closer to the islands." *Id.*

[21] Despite the logic of Jarvis's explanation, it is noteworthy that A. Leon Higginbotham, Jr., who was a prominent jurist on this Court and a noted legal historian, had a different theory. Judge Higginbotham believed the choice to assign the Virgin Islands to the Court of Appeals for the Third Circuit was largely the result of the hostile political and racial climate at the time. In an interview for the Lyndon Baines Johnson Library Oral History Project, Judge Higginbotham opined that we were assigned jurisdiction over the Virgin Islands for "[t]he same reason why you have Puerto Rico in the First Circuit, which is Massachusetts." Interview by Joe B. Frantz with A. Leon Higginbotham, Circuit Judge, Third Circuit Court of Appeals, in Philadelphia, PA (Oct. 7, 1976) (transcript available from the Lyndon Baines Johnson Library Oral History Collection at http://www.lbjlibrary.net/assets/documents/archives/oral_histories/higginbo/higginbo.pdf). Judge Higginbotham explained:

> When the Virgin Islands became a U.S. possession it was then 90 per cent non-white, about 90 per cent black, and the closest circuit to it would be the Fifth, which is Alabama, Mississippi, Louisiana, Georgia, Florida, Texas. With the degree of hostility between whites and blacks it was thought—so I understand, I have no documentation of it—that it would be better to have them in a different circuit. And I believe the same was true of Puerto Rico; the

However, the choice of the Third Circuit was not without criticism. Just seven years later, in 1924, A. A. Berle, Jr., who was counsel for the Virgin Islands Committee and for the Virgin Islands branch of the American Federation of Labor, advocated for a different venue in his testimony before the Senate Committee on Territories and Insular

---

> Fourth Circuit, which is Virginia, Maryland, North Carolina, and maybe also South Carolina, or the Fifth were geographically closer.

*Id.*

However, when viewed in context with then current events, it is not at all certain that legislators would have been concerned about the racial demographics of the Virgin Islands when deciding which Court of Appeals to assign them to. President Woodrow Wilson had already begun segregating the federal government around the time of the U.S.'s annexation of the Virgin Islands. *See* Kathleen L. Wolgemuth, *Woodrow Wilson and Federal Segregation*, 44 J. Negro Hist. 158, 161 (1959) (noting that under President Wilson's administration, "[b]y the end of 1913, segregation had been realized in the Bureau of Engraving and Printing, the Post Office Department, the Office of the Auditor for the Post Office, and had even begun in the City Post Office in Washington, D.C."); *id.* (stating that during Wilson's presidency, "[f]ederal segregation was being enacted to keep Negroes and whites apart" while "other steps were taken to appoint Negroes only to menial posts or to restrict them from obtaining Civil Service jobs").

Given this state of affairs, it is at least debatable whether elected representatives would have been as concerned about subjecting the Virgin Island's predominantly black population to the judicial oversight of jurisdictions in the Deep South as Judge Higginbotham's theory assumed. Moreover, as Judge Higginbotham conceded, there is little authority or documentation to support his view.

13

Possessions of the United States.[22]  He testified about a congressional commission that had made suggestions for the structure of the government in the Virgin Islands. Specifically, Berle informed the Senate Committee that "[t]he commission . . . believes[] that in the revision of the judicial system of the islands[,] special attention should be given to the establishment of a court of appellate jurisdiction more accessible than the present tribunal (United States [C]ircuit [C]ourt, [T]hird [Circuit], Philadelphia, Pa.)."[23]

Yet as we have explained, there was really no realistic alternative to the Third Circuit and certainly no closer, more practical alternative at the time.  The First and Second Circuits were even farther away than the Third and, for the reasons we have explained, the Fifth Circuit, though closer, was simply not a practical choice.[24]

Although the United States acquired the Virgin Islands in 1917, Congress neglected to organize any civilian government there until 1936, when it enacted the Virgin Islands Organic Act.[25]  That Act established a legislative body in the Virgin Islands along with municipal councils in Charlotte Amalie, St. Thomas and in Christiansted, St. Croix (which had been the Danish Capital).[26]

---

[22] *1924 Senate Hearings*, *supra* note 19, at 3 (statement of A. A. Berle, Jr.).

[23] *Id.* (parenthetical in original).

[24] *See* Jarvis, *supra* note 6, at 167 n.38 (discussing geographic impracticalities of placing jurisdiction within other circuits).

[25] *Id.* at 161; *see* Organic Act of the Virgin Islands of the United States (Virgin Islands Permanent Government Act), Pub. L. No. 74-749, ch. 699, 49 Stat. 1807 (1936) (codified as amended at 48 U.S.C. § 1405 *et seq.*).

[26] Jarvis, *supra* note 6, at 161; Organic Act of the Virgin Islands, ch. 699, § 2, 49 Stat. at 1807.  Congress had initially established only a temporary government on the Virgin Islands consisting of "a governor appointed by the President . . . with the consent of the Senate, [and providing that the governor] might be an Army or Navy officer.  As a matter of custom, [the governor was] always . . . a naval

However, most of the more intricate details of Virgin Islands governance were not resolved until Congress passed a Revised Organic Act in 1954.[27] That Act "laid the groundwork for the current Virgin Islands court system," including its "trial courts and an appellate court."[28] In particular, it established the District Court of the Virgin Islands as an Article IV court[29] with "jurisdiction over federal questions, regardless of the amount in controversy, and general original jurisdiction over questions of local law, subject to the exclusive jurisdiction of

---

officer, but he was not technically responsible to the Navy . . . nor was he technically responsible to any department of the Government." *1924 Senate Hearings*, *supra* note 19, at 3-4 (statement of A. A. Berle, Jr.).

[27] Revised Organic Act of the Virgin Islands, Pub. L. No. 83-517, ch. 558, 68 Stat. 497 (1954) (codified as amended at 48 U.S.C. § 1541 *et seq.*).

[28] *Defoe v. Phillip*, 702 F.3d 735, 738 (3d Cir. 2012); *see* Revised Organic Act, ch. 558, §§ 21-26, 68 Stat. at 506-07. A. A. Berle described the difficulties with the Virgin Islands judicial system, as initially constructed following acquisition from Denmark, in his testimony before the Senate Committee on Territories and Insular Possessions in 1924:

> [T]he system is archaic; it is an old Danish system, which even the Danes were about to revise, and one of the particular difficulties of which the islands bitterly complain lies in the fact that a man is judged by a police officer, who corresponds roughly with our district attorney; and when he comes up for final trial, this same judge-district attorney prosecutes him.

*1924 Senate Hearings*, *supra* note 19, at 6 (statement of A. A. Berle, Jr.).

[29] Article IV, Section 3 of the United States Constitution states, in relevant part: "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2.

the local courts over civil actions where the amount in controversy was less than \$500"[30] and over criminal actions where the maximum punishment was a fine of \$100, imprisonment for six months, or both.[31] Finally, the Revised Organic Act established the District Court of the Virgin Islands as an appellate court charged with reviewing the judgments and orders of the local Virgin Islands courts.[32]

Pursuant to a series of amendments to the Revised Organic Act in 1984 (the "1984 Amendments"), the appellate role of the District Court expanded. One such amendment created an Appellate Division of the Virgin Islands District Court, which would appoint three-judge panels to hear appeals

---

[30] *Moravian Sch. Advisory Bd. of St. Thomas, V.I. v. Rawlins*, 70 F.3d 270, 272 (3d Cir. 1995); *see* Revised Organic Act, ch. 558, §§ 22-23, 68 Stat. at 506.

[31] Revised Organic Act, ch. 558, §§ 22-23, 68 Stat. at 506. Under the Revised Organic Act, the local Virgin Islands courts also maintained exclusive original jurisdiction over "all violations of police and executive regulations." *Id.* at ch. 558, § 23.

[32] *Id.* at ch. 558, § 22. As originally constituted, judges of the District Court of the Virgin Islands were appointed by the governor, who retained the right to remove them, and apparently did so at will. *1924 Senate Hearings*, *supra* note 19, at 6 (statement of A. A. Berle, Jr., Counsel for the Virgin Islands Committee). See *United States v. Malmin*, 272 F. 785, 792 (3d Cir. 1921), wherein this Court granted a writ of mandamus to restore the position of Judge Lucius J. M. Malmin, a district court judge in the Virgin Islands who had been removed by the governor. The governor had appointed the judge pursuant to a provision of the Colonial Code of the Municipality of St. Croix. *Id.* at 787-88. However, the provision granting the governor that power was set aside in 1920 by President Woodrow Wilson. *Id.* at 788. Shortly following that repeal, the governor nevertheless removed Judge Malmin from the bench and appointed a successor. *Id.* We issued a writ ordering Judge Malmin's reinstatement to the bench and removing the judge whom the governor had appointed to replace him. *Id.* at 792.

from local courts.[33]  Final decisions of the Appellate Division could then be appealed to the Court of Appeals for the Third Circuit as a matter of right.[34]

The 1984 Amendments also provided a mechanism that allowed the Virgin Islands legislature to substantially alter this basic framework.  The Amendments granted that legislature power to "divest the District Court of original jurisdiction for local matters by vesting that jurisdiction in territorial courts established by local law for all causes for which 'any court established by the Constitution and laws of the United States does not have exclusive jurisdiction.'"[35]   The 1984 Amendments thus laid the groundwork for a "dual system of local and federal judicial review in the Virgin Islands,"

---

[33] *See* Act of Oct. 5, 1984, Pub. L. No.  98-454, title VII, § 705, 98 Stat. 1732, 1739 [hereinafter *1984 Amendment to Revised Organic Act*] (codified at 48 U.S.C. § 1613a(a)) ("Prior to the establishment of [local Virgin Islands] appellate court[s] . . . , the District Court of the Virgin Islands shall have such appellate jurisdiction over the courts of the Virgin Islands established by local law to the extent now or hereafter prescribed by local law . . . ."); *id.* (codified at 48 U.S.C. § 1613a(b)) ("Appeals to the District Court of the Virgin Islands shall be heard and determined by an appellate division of the court consisting of three judges, of whom two shall constitute a quorum.").

[34] *Id.* at title VII, § 705, 98 Stat. at 1740 (codified at 48 U.S.C. § 1613a(c)) ("The United States Court of Appeals for the Third Circuit shall have jurisdiction of appeals from all final decisions of the district court on appeal from the courts established by local law.").

[35] *Parrott v. Gov't of the Virgin Islands*, 230 F.3d 615, 619 (3d Cir. 2000) (quoting 48 U.S.C. § 1611(b)); *see 1984 Amendment to Revised Organic Act*, title VII, § 702, 98 Stat. at 1737 (codified at 48 U.S.C. § 1611(b) (1984)) ("The legislature of the Virgin Islands may vest in the courts of the Virgin Islands established by local law jurisdiction over all causes in the Virgin Islands over which any court established by the Constitution and laws of the United States does not have exclusive jurisdiction.").

17

whereby the Virgin Islands courts could expand their original jurisdiction over both criminal and civil matters.[36] By 1991, the Virgin Islands had "exercised that power, vesting exclusive jurisdiction over local [civil] actions in the Territorial Court of the Virgin Islands—now known as the Superior Court of the Virgin Islands."[37] Thereafter, "the District Court continued to hear appeals from local trial courts, and it retained concurrent jurisdiction over local crimes that are similar to federal crimes."[38]

This concurrent jurisdiction ended in 1994 when the Virgin Islands legislature vested exclusive jurisdiction over all local crimes with the Superior Court of the Virgin Islands.[39] That court thus became the initial, exclusive arbiter of both local criminal and civil actions.

The District Court of the Virgin Islands continued to serve an appellate function until 2004, when the Virgin Islands legislature exercised the authority Congress had given it in the Revised Organic Act to establish the Supreme Court of the

---

[36] *Parrott*, 230 F.3d at 619.

[37] *Defoe*, 702 F.3d at 738; *see* Act of Sept. 5, 1990, No. 5594, § 1, 1990 V.I. Sess. Laws 271 (codified as amended at V.I. Code Ann. tit. 4, § 76(a)) (granting the Superior Court of the Virgin Islands "original jurisdiction in all civil actions regardless of the amount in controversy" and thus divesting the District Court of the Virgin Islands original jurisdiction over purely local civil matters); *1984 Amendment to Revised Organic Act*, title VII, § 703, 98 Stat. at 1738 ("[T]he District Court of the Virgin Islands shall have general original jurisdiction in all causes in the Virgin Islands the jurisdiction over which is not then vested by local law in the local courts of the Virgin Islands . . . .").

[38] *Defoe*, 702 F.3d at 738.

[39] Act of Sept. 30, 1993, No. 5890, § 1, 1993 V.I. Sess. Laws 214 (codified as amended at V.I. Code Ann. tit. 4, § 76(b)); *see 1984 Amendment to Revised Organic Act*, title VII, § 702, 98 Stat. at 1737 (codified at 48 U.S.C. § 1611(b) (1984)).

Virgin Islands.[40]  The creation of that court "altered the relationship between the federal judiciary and the Virgin Islands court system."[41]  In addition to ending the federal district court's appellate jurisdiction over local decisions,[42] the establishment of the Supreme Court of the Virgin Islands gave rise to our certiorari jurisdiction over final decisions of that court pursuant to the 1984 Amendments to the Revised Organic Act, as codified in 48 U.S.C. § 1613.[43]  It also provided for a mechanism for the termination of that certiorari jurisdiction.  We explained this in *Pichardo v. Virgin Islands Commissioner of Labor*:

> [U]nder the terms of the Revised Organic Act, for the first fifteen years after the establishment of the Virgin Islands Supreme Court, [the Court of Appeals for the Third Circuit] "shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of the Virgin Islands from which a decision could be had."[44]  [The Act] also requires our Court to submit reports to Congress regarding whether the Supreme Court of the Virgin Islands has "developed sufficient institutional traditions to

---

[40] *See* Act of Oct. 29, 2004, No. 6687, § 1, 2004 V.I. Sess. Laws 179 (codified as amended at V.I. Code Ann. tit. 4, § 2(a)) (designating the Supreme Court of the Virgin Islands as the "court of last resort" pursuant to the power Congress granted the Virgin Islands legislature under section 21(b) of the Revised Organic Act).

[41] *Defoe*, 702 F.3d at 739.

[42] *See* 48 U.S.C. § 1613a(a) (setting forth that the District Court's appellate jurisdiction ends once the Virgin Islands legislature creates its own appellate court).

[43] 48 U.S.C. § 1613 (1994), *amended by* 48 U.S.C. § 1613 (2012); *1984 Amendment to the Revised Organic Act*, title VII, § 704, 98 Stat. at 1739.

[44] 48 U.S.C. § 1613 (1994 version).

justify direct review by the Supreme Court of the United States from all such final decisions."[45]

Thus, Congress included an interim reporting obligation in recognition of the possibility that the new Supreme Court of the Virgin Islands "might develop sufficient institutional traditions [to replace our certiorari review with certiorari review by the U.S. Supreme Court] before the fifteen-year mark."[46] The rate of maturation and sophistication of the Supreme Court of the Virgin Islands is noted in our 2012 opinion in *Banks v. International Rental & Leasing Corp.* (which predated H.R. 6116).[47] There, we certified a controlling question of Virgin Islands law to the Supreme Court of the Virgin Islands pursuant to rules that court had adopted to advise us on questions of local law when appropriate.[48] We did so because "the United States Supreme Court has encouraged federal appellate courts to seek guidance from the highest court of the appropriate jurisdiction if that court has adopted procedures for accepting certified questions of law."[49] In relying on the resulting opinion of the Supreme Court of the Virgin Islands to resolve the issue before us, we

---

[45] *Pichardo v. Virgin Islands Comm'r of Labor*, 613 F.3d 87, 94 (3d Cir. 2010) (quoting 48 U.S.C. § 1613 (1994 version)).

[46] *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 86 (3d Cir. 2013) (*Kendall I*); *see Defoe*, 702 F.3d at 739-40 (discussing 2012 interim report).

[47] 680 F.3d 296 (3d Cir. 2012).

[48] *Id.* at 298-99; *see* V.I. Sup. Ct. R. 38(a) ("The Supreme Court of the Virgin Islands may answer questions of law certified to it by a court of the United States . . . if there is involved in any proceeding before the certifying court a question of law which may be determinative of the cause then pending in the certifying court and concerning which it appears there is no controlling precedent in the decisions of the Supreme Court.").

[49] *Banks*, 680 F.3d at 298.

commented that the opinion was "commendably thorough and very well reasoned."[50]

## 2. Repeal of the Third Circuit's Certiorari Jurisdiction

Pursuant to our obligation to periodically assess its development and maturation, our prior Chief Judge appointed a committee to undertake an in-depth inquiry into the progress and jurisprudence of the Supreme Court of the Virgin Islands.[51] In 2012, that committee issued a glowing assessment. It unanimously concluded that the Supreme Court of the Virgin Islands had demonstrated "sufficient institutional traditions to justify direct review by the Supreme Court of the United States."[52] Accordingly, the committee recommended that Congress eliminate our certiorari jurisdiction in favor of direct review by the U.S. Supreme Court.[53]

Congress quickly acted upon our recommendation. That same year, it passed H.R. 6116, which (as we noted at the outset) replaced our certiorari jurisdiction with direct U.S. Supreme Court certiorari review of "cases commenced on or after" the statute's effective date of December 28, 2012.[54] More specifically, in section 3 of H.R. 6116, Congress specified an "EFFECTIVE DATE" for the repeal of our jurisdiction as follows: "The amendments made by this Act

---

[50] *Id.* at 299.

[51] Letter from D. Brooks Smith, Circuit Judge, Third Circuit Court of Appeals, to Theodore A. McKee, Chief Circuit Judge 1 (April 18, 2012), http://www.visupremecourt.org/wfData/files/BookletReportof VirginIslandsSupremeCourt.pdf.

[52] Judicial Council of the U.S. Court of Appeals for the Third Circuit, *Report on the Virgin Islands Supreme Court* 17, 23 (2012) [hereinafter *Third Circuit Judicial Council Report*], http://www.visupremecourt.org/wfData/files/BookletReportof VirginIslandsSupremeCourt.pdf.

[53] *Id*. at 17, 23. Indeed, we later noted that the Supreme Court of the Virgin Islands "passed that test with flying colors." *Kendall I*, 716 F.3d at 86.

[54] *H.R. 6116*, 126 Stat. at 1606-07.

apply to cases commenced on or after the date of the enactment of this Act."[55]

Thus, as we have already explained, we must now decide if "cases commenced on or after the date of the enactment" refers to all cases filed in the Virgin Islands courts on or after the enactment of H.R. 6116 (as we held in *Bason*) or only to *appeals* from final decisions of the Supreme Court of the Virgin Islands that were commenced on or after that date.

## II. DISCUSSION

"The doctrine of *stare decisis* is . . . 'essential to the respect accorded to the judgments of . . . [c]ourt[s] and to the stability of the law.'"[56] Thus, we do not lightly revisit an issue that a panel of this Court has already decided in a precedential opinion. Nevertheless, Federal Appellate Procedure Rule 35 appropriately allows courts of appeals to grant en banc (re)hearing to reconsider prior precedential decisions when a case "involves a question of exceptional importance."[57]

Thus, stare decisis "does not compel us to follow a past decision when its rationale no longer withstands 'careful analysis.'"[58] "If [our] precedent's reasoning was clearly wrong, then stare decisis loses some (though not all) of its force."[59] Indeed, en banc review serves a very important institutional purpose for just that reason. It provides a vehicle by which we can revisit prior decisions when appropriate.

Here, we have decided not only to revisit an issue we have already resolved in a precedential decision, but also to grant an initial en banc hearing on that issue without awaiting a panel decision.

> Initial en banc hearing is extraordinary; it is ordered only when a majority of the active judges who are not disqualified, determines that

---

[55] *Id.* at § 3, 126 Stat. at 1607.

[56] *Arizona v. Gant*, 556 U.S. 332, 348 (2009) (quoting *Lawrence v. Texas,* 539 U.S. 558, 577 (2003)).

[57] Fed. R. App. P. 35(a)(2).

[58] *Gant*, 556 U.S. at 348 (quoting *Lawrence*, 539 U.S. at 577).

[59] *Morrow v. Balaski,* 719 F.3d 160, 180 (3d Cir. 2013) (*en banc*) (Smith, J., concurring) *as amended* (June 14, 2013).

the case is controlled by a prior decision of the court which should be reconsidered and the case is of such immediate importance that exigent circumstances require initial consideration by the full court.[60]

We have concluded that this case presents such a question and that exigent circumstances warranted initial en banc review.

Given the important role this Court has played in the evolution of the judicial system of the Virgin Islands, the very important institutional issues implicated by the revocation of our certiorari jurisdiction, and the impact our decision will have on thousands of pending cases in the courts of the Virgin Islands, we believe that exigent circumstances justified initial en banc review here.

As we have noted, we first decided the issue we revisit today in *Bason*, a decision we issued shortly after H.R. 6116 became law. The "threshold question[]" there was "whether [the Court of Appeals for the Third Circuit] retain[s] certiorari jurisdiction over proceedings that were filed in the Virgin Islands courts before the date of enactment of H.R. 6116."[61] More precisely, we defined the issue as "whether 'cases commenced' carries a broader meaning referring to the filing of a complaint in the Superior Court or a narrower meaning referring to the filing of a certiorari petition in this Court."[62]

We concluded that "cases commenced," as used in H.R. 6116, encompassed initial "proceedings filed in the Virgin Islands courts," e.g., complaints filed in the Superior Court of the Virgin Islands.[63] Our conclusion rested on the traditional understanding that a case is "commenced when it is first brought in an appropriate court."[64] We reasoned that had Congress "indeed meant to strip this Court of certiorari

---

[60] 3d Cir. I.O.P. 9.2 (2018) (emphasis added).

[61] *Bason*, 767 F.3d at 201.

[62] *Id.* at 205-06 (quoting *Kendall I*, 716 F.3d at 87).

[63] *Id.* at 206.

[64] *Id.* (internal quotation marks omitted) (citing *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094 (10th Cir. 2005))

23

jurisdiction over proceedings already filed in the Virgin Islands courts before the enactment date of the legislation," it would have used clearer language to do so, just as it did when it divested the Court of Appeals for the First Circuit of its jurisdiction over final decisions of the Supreme Court of Puerto Rico.[65]

Shortly after *Bason*, we briefly addressed the same jurisdictional question in *Fahie v. Virgin Islands.*[66] Like *Bason*, *Fahie* came to us on a writ of certiorari to the Supreme Court of the Virgin Islands.[67] In addition to the briefing provided by the parties there, the Virgin Islands Bar Association filed an amicus brief "challenging our jurisdiction to consider th[e] matter at all."[68] The jurisdictional issue identified in *Fahie* was identical to the one that is now before this en banc Court:

> The operative question [was] whether [H.R. 6116] revokes jurisdiction over cases commenced in the Superior Court on or after December 28, 2012, or whether the law only revokes jurisdiction over cases that have commenced in our Court (through a petition for writ of certiorari) on or after that date.[69]

That question was key because "the case against Fahie commenced in the Superior Court in November 2011, but was

---

[65] *Id.* at 206-07; *see* Act of Aug. 30, 1961, Pub. L. No. 87-189, § 3, 75 Stat. 417 (1961) (current version at 28 U.S.C. § 1258) (specifying that the repeal of jurisdiction of the First Circuit Court of Appeals over cases from the Supreme Court of Puerto Rico "shall not deprive the Court of Appeals for the First Circuit of jurisdiction to hear and determine appeals taken to that court . . . before the effective date of this Act"); *see also* discussion *infra*, Part II.B.2.

[66] 858 F.3d 162 (3d Cir. 2017).

[67] *Id.* at 164.

[68] *Id.*

[69] *Id.* at 167.

24

not the subject of a petition [for certiorari] to us until 2016," four years after H.R. 6116 became law.[70]

As in *Bason*, we began our jurisdictional analysis in *Fahie* by noting that the Revised Organic Act had given us, "for a limited time, certiorari jurisdiction over all final decisions of the highest court of the Virgin Islands from which a decision could be had."[71]  But we explained that *Bason* had already decided that "cases commenced" referred to "all cases commenced in the Superior Court [on or] after December 28, 2012."[72]  In a footnote that foreshadowed this appeal, we added that "[e]ven if we were to agree that *Bason* was wrongly decided, we are not at liberty to overturn the holding without en banc review because it is not dicta."[73]

## A.  The Meaning of "Cases Commenced"

H.R. 6116 did not define "cases commenced."  *Bason* therefore focused on the need to construe undefined terms in a

---

[70] *Id.* at 168.

[71] *Id.* at 167 (citing 48 U.S.C. § 1613 (1994 version)); *see 1984 Amendment to Revised Organic Act*, title VII, § 704, 98 Stat. at 1739.

[72] *Fahie*, 858 F.3d at 168.

[73] *Id.* at 168 n.8.  In *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671 (V.I. 2015), a 2015 opinion written by Justice Maria M. Cabret, the Supreme Court of the Virgin Islands suggested similar reservations about the result we reached in *Bason.* There, the court observed:

> President Barack Obama signed H.R. 6116 into law, ending the Third Circuit's certiorari jurisdiction 10 years early.  Despite this, the Third Circuit recently held that the effective date of this legislation . . . referenced the date a case was commenced by filing a complaint in the Superior Court of the Virgin Islands, as opposed to the date a case is commenced in the Third Circuit seeking a writ of certiorari to the Supreme Court of the Virgin Islands.

*Id.* at 689 n.10 (citing *Bason*, 767 F.3d at 206).

25

statute "in accordance with [their] ordinary or natural meaning."[74] In doing so, we first pointed to precedent from the U.S. Supreme Court and several of our sister circuit courts of appeals and observed that "[t]he term 'case' has *generally* been understood to include judicial proceedings of any kind."[75] We then equated "cause" with "case," noting that they "are constantly used as synonyms in statutes . . . , each meaning a proceeding in court, a suit, or action."[76] Accordingly, we deduced that "cases commenced" in H.R. 6116 referred to "case[s] or cause[s] of action . . . 'when [they are] first brought in an appropriate court.'"[77]

In conducting our analysis, we acknowledged the Virgin Islands government's argument that, based on U.S. Supreme Court precedent as well as "the alleged purpose" of H.R. 6116, the phrase "cases commenced" should be defined as the filing of a certiorari petition.[78] However, we dismissed that argument without much discussion.[79] Yet as the U.S. Supreme Court has instructed, "[i]t is contrary to the spirit of

---

[74] *United States v. Brown*, 740 F.3d 145, 149 (3d Cir. 2014) (quoting *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)), *cited with approval by Bason*, 767 F.3d at 206.

[75] *Bason*, 767 F.3d at 206 (emphasis added).

[76] *Id.* (quoting *Hohn v. United States*, 524 U.S. 236, 241 (1998)) (ellipsis in original) (internal quotations omitted).

[77] *Id.* (citing *Pritchett*, 420 F.3d at 1094); *see also, e.g.*, *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 686 (9th Cir. 2005) ("In California, as in the federal courts, a suit is 'commenced' upon filing.").

[78] *Bason*, 767 F.3d at 206.

[79] *See id.* at 209 (declining to find the U.S. Supreme Court's decision in *Slack v. McDaniel*, 529 U.S. 473 (2000), controlling because *Slack* "did not discuss whether there may be a meaningful difference between . . . an open-ended and unmodified provision [like H.R. 6116] and a provision that refers, for instance, to 'appellate cases commenced'"); *id.* at 209 (distinguishing *Slack* because, unlike H.R. 6116, the habeas provisions at issue there "did not divest one court of its jurisdiction and confer such jurisdiction on another court").

the . . . law itself to apply a rule founded on a particular reason to a case where that reason utterly fails."[80]  Our reliance on the *generally accepted* meaning of "cases" rather than focusing on the reason the legislation was enacted or the specific context in which the word was used in H.R. 6116, resulted in our adopting a definition that was not sufficiently tethered to, or informed by, congressional purpose.

We now conclude that the decision of the U.S. Supreme Court in *Slack v. McDaniel* should have more sharply focused and guided our inquiry in *Bason*.  In *Slack*, the Court had to decide whether a provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)[81] amending 28 U.S.C. § 2253, a habeas corpus statute, applied to a request for a "Certificate of Appeal" (COA) from a district court's denial of a habeas petition.[82]  The Court noted that it had already held in 1997 in *Lindh v. Murphy*[83] that "AEDPA's amendments to 28 U.S.C. § 2254, the statute governing entitlement to habeas relief in the district court, applied to cases filed after AEDPA's effective date."[84]  Slack argued that the relevant AEDPA provision did not apply to him because his habeas petition had been "commenced in the [d]istrict [c]ourt pre-AEDPA," i.e., before AEDPA imposed new requirements for habeas petitions.[85]  The Court disagreed.  It held that AEDPA did apply because Slack had filed his COA request after AEDPA was enacted.[86]  The analysis turned on the fact that the provision Slack's argument relied upon pertained to "proceedings in the district courts while [28 U.S.C. § 2253, the

---

[80] *Patton v. United States*, 281 U.S. 276, 306 (1930) (quoting *Reno Smelting Works v. Stevenson*, 21 P. 317, 320 (Nev. 1889), *abrogated on other grounds by Williams v. Florida*, 399 U.S. 78 (1970).

[81] 28 U.S.C. § 2253(c) (1994 ed., Supp. III).

[82] *Slack*, 529 U.S. at 481.

[83] 521 U.S. 320 (1997).

[84] *Slack*, 529 U.S. at 481 (citing *Lindh*, 521 U.S. at 327).

[85] *Id.*

[86] *Id.* at 482.

controlling provision, was] directed to proceedings in the appellate courts."[87]

Slack thus informs our resolution of the meaning of "cases commenced" in H.R. 6116. As the Court there explained, "[w]hen Congress instructs . . . that application of a statute is triggered by the commencement of a case, the relevant case for a statute directed to appeals is the one initiated in the appellate court."[88] The Court further explained that "[w]hile an appeal is a continuation of the litigation started in the trial court, it is a distinct step. We have described proceedings in the courts of appeals as 'appellate cases.' Under AEDPA, an appellate case is commenced when the application for a COA is filed."[89]

Similarly, H.R. 6116 was enacted to address certiorari review of decisions of the Supreme Court of the Virgin Islands. [90] The interpretation of "cases commenced" in H.R. 6116 must therefore focus on appellate cases—cases on certiorari review. Our analysis in Bason was unduly influenced by reliance on trial-level cases and trial-level process.[91] The resulting conclusion was insufficiently

---

[87] Id. at 481.

[88] Id. at 482.

[89] Id. at 481-82 (citations omitted).

[90] Cf. Bason, 767 F.3d at 209 ("[B]ecause [H.R. 6116] is supposedly directed to proceedings in the Third Circuit, it would purportedly then apply to proceedings initiated in the Third Circuit after H.R. 6116's date of enactment.").

[91] See id. at 207. This portion of Bason cited, for example, the provision vesting federal district courts with supplementary jurisdiction in the Judicial Improvements Act of 1990, Pub. L. No. 101-650, title III, § 310, 104 Stat. 5089, 5114 (codified at 28 U.S.C. § 1367) ("The amendments made by this section shall apply to civil actions commenced on or after the date of the enactment of this Act." (emphasis added)); the removal jurisdiction provision of the Judicial Improvements Act of 1985, Pub. L. No. 99-336, § 3(b), 100 Stat. 633, 637 (1986) (codified as amended at 28 U.S.C. § 1441) ("The amendment made by this section shall apply with respect to claims in civil actions commenced in State courts

informed by the legislative purpose of H.R. 6116 and thus inconsistent with the U.S. Supreme Court's analysis in *Slack*.[92]

## B. Similar Jurisdictional Repeals

Interpreting "cases commenced" in H.R. 6116 as the filing of a petition for certiorari review, as opposed to the filing of a complaint, is consistent with Congress's termination of the certiorari jurisdiction other circuit courts of appeals temporarily had over the supreme courts of other U.S. territories.

## 1. Guam

Congress gave the Court of Appeals for the Ninth Circuit temporary jurisdiction over appeals from the Supreme Court of Guam in 1984.[93] The relevant statute provided:

> [F]or the first fifteen years following the establishment of the [Supreme Court of Guam],

---

on or after the date of the enactment of this section." (emphasis added)); and the provision governing the district courts' removal jurisdiction and interlocutory appeals in class action proceedings in the Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 9, 119 Stat. 4, 14 (codified as amended at 28 U.S.C. § 1332) ("The amendments made by this Act shall apply to *any civil action* commenced on or after the date of enactment of this Act." (emphasis added)). *Bason*, 767 F.3d at 207.

[92] We emphasize that our analysis here is not intended to necessarily provide guidance on statutes other than H.R. 6116. This includes, but is not limited to, those analogous provisions in the Antiterrorism and Effective Death Penalty Act of 1996, codified as amended in scattered sections of 8 U.S.C., 18 U.S.C., 22 U.S.C., 28 U.S.C., and 34 U.S.C.; the Federal Rules of Appellate Procedure; the Third Circuit Local Rules; the Third Circuit Internal Operating Procedures; the Federal Rules of Civil Procedure; and district-level statutes, such as those embodied in the Class Action Fairness Act, codified at 28 U.S.C. §§ 1453 and 1711-1715.

[93] Act of Oct. 5, 1984, Pub. L. No. 98-454, title VIII, § 801, 98 Stat. 1732, 1742 (current version at 48 U.S.C. § 1424-2).

the United States Court of Appeals for the Ninth Circuit shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of Guam from which a decision could be had. The Judicial Council of the Ninth Circuit shall submit reports to the Committee on Energy and Natural Resources of the Senate and the Committee on Interior and Insular Affairs of the House of Representatives at intervals of five years following the establishment of such appellate court as to whether it has developed sufficient institutional traditions to justify direct review by the Supreme Court of the United States from all such final decisions.[94]

Thus, like our own jurisdiction over the Supreme Court of the Virgin Islands, certiorari jurisdiction of the Court of Appeals for the Ninth Circuit over the Supreme Court of Guam was meant to sunset after fifteen years or until the judicial council of that circuit determined that Guam had "developed sufficient institutional traditions to justify direct review by the [U.S.] Supreme Court."[95]

Yet in 2004, before the expiration of fifteen years, Congress amended the law to revoke the jurisdiction of the Court of Appeals for the Ninth Circuit, just as it revoked our certiorari jurisdiction in H.R. 6116.[96] However, in contrast to H.R. 6116, in the case of Guam, Congress failed to provide an effective date for the legislation rescinding certiorari jurisdiction. The amendment simply struck language that had authorized the Court of Appeals for the Ninth Circuit to exercise certiorari review over final decisions of the Supreme Court of Guam:

---

[94] *Id.*

[95] *Id.*

[96] *See* Act of Oct. 30, 2004, Pub. L. No. 108-378, § 2, 118 Stat. 2206, 2208 (current version at 48 U.S.C. § 1424-2) (striking language in § 1424-2 regarding certiorari jurisdiction of the Court of Appeals for the Ninth Circuit).

Section 22B of the Organic Act of Guam (48 U.S.C. 1424–2) is amended by striking ": *Provided*, That [for the first fifteen years following the establishment of the appellate court authorized by section 22A(a) of this Act, the United States Court of Appeals for the Ninth Circuit shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of Guam from which a decision could be had. . . .[97]]" and all that follows through the end and inserting a period. [98]

The Court of Appeals for the Ninth Circuit had to interpret the scope of that repeal just two years later in *Santos v. Guam*.[99] There, a certiorari petition had been filed, calendared, and argued in the Ninth Circuit prior to the repeal.[100] The court therefore had to determine "whether the jurisdiction previously granted [to the Court of Appeals for the Ninth Circuit], and existing at the time certiorari was granted, . . . evaporated upon the enactment date of the repeal, or . . . continued to exist until the pending appeal could be decided."[101]

As the Court of Appeals explained, "Congress [had] amended the distribution of appellate jurisdiction in the Territory of Guam without expressing an intent as to the effective date of its new statute."[102] In resolving the issue, the court looked to the U.S. Supreme Court's 1952 ruling in *Bruner v. United States*.[103] The court read that case to explain that "when a jurisdictional statute under which an action had been properly filed was repealed, without any reservation as to

---

[97] Act of Oct. 5, 1984, title VIII, § 801, 98 Stat. at 1742.

[98] Act of Oct. 30, 2004, § 2, 118 Stat. at 2208.

[99] 436 F.3d 1051 (9th Cir. 2006).

[100] *Id.* at 1052.

[101] *Id.*

[102] *Id.* at 1053.

[103] 343 U.S. 112 (1952).

pending cases, all such pending cases were to be dismissed."[104] Because there was "no principled distinction between *Bruner*'s jurisdiction-withdrawing statute" and the one revoking certiorari authority over appeals from the Supreme Court of Guam, the court reasoned that Congress must have intended the revocation of jurisdiction to apply to all cases as soon as it became law.[105] Accordingly, the court concluded "Congress had taken away [its] power to hear" and "to decide the case."[106] Thus, to the extent it is relevant to our inquiry, *Santos* counsels in favor of broadly interpreting jurisdictional repeals that do not contain a savings clause.

This case, is of course, different because Congress *did* specify the date that H.R. 6116 was to become effective: December 28, 2012.[107] Defendants thus argue that "Congress uses specific language to *exempt* cases already filed in the appellate court divested of jurisdiction."[108] They suggest that since the appeals process for this case began in the Virgin Islands courts before H.R. 6116 became effective, and since Congress did not specifically exclude appeals pending on its effective date, the repeal occasioned by H.R. 6116 does not apply here. However, that argument fails to address the meaning of "cases commenced" in H.R. 6116. Thus, to accept it, we would have to ignore the teachings of *Slack* and thereby judicially amend H.R. 6116 by reading "cases commenced on or after December 28, 2012" out of the statute. We decline to do so.

## 2. Puerto Rico

We are similarly unpersuaded by attempts to analogize H.R. 6116 to the revocation of certiorari jurisdiction that the Court of Appeals for the First Circuit had over final decisions of the Supreme Court of Puerto Rico.

Congress gave the Court of Appeals for the First Circuit temporary certiorari jurisdiction over appeals from the

---

[104] *Santos*, 436 F.3d. at 1052 (citing *Bruner*, 343 U.S. at 115-17).

[105] *Id.* at 1053.

[106] *Id.*

[107] H.R. 6116, § 3, 126 Stat. at 1607.

[108] Pet'r's' Suppl. Br. 7.

Supreme Court of Puerto Rico in 1948.[109]  Unlike the Revised Organic Act provision pertaining to decisions of the Supreme Court of the Virgin Islands or the statute giving the Court of Appeals for the Ninth Circuit jurisdiction over decisions of the Supreme Court of Guam, the law vesting the Court of Appeals for the First Circuit with jurisdiction over the Supreme Court of Puerto Rico contained no sunset provision.  Rather, it stated, in relevant part:

> The court[] of appeals for the First . . . Circuit[] shall have jurisdiction of appeals from all final decisions of the supreme court[] of Puerto Rico . . . in all cases involving the Constitution, laws or treaties of the United States or any authority exercised thereunder, in all habeas corpus proceedings, and in all other civil cases where the value in controversy exceeds $5,000, exclusive of interest and costs. [110]

Nevertheless, Congress enacted legislation in 1961 that repealed that certiorari jurisdiction.  That legislation simply stated:

> Section 1293 of title 28, United States Code, is repealed:
> *Provided,* That such repeal shall not deprive the Court of Appeals
> for the First Circuit of jurisdiction to hear and determine appeals
> taken to that court from the Supreme Court of Puerto Rico before
> the effective date of this Act.[111]

Thus, Congress expressly included a savings clause preserving certiorari authority "over *appeals* taken to that Court from the

---

[109] Act of June 25, 1948, ch. 646, § 1293, 62 Stat. 929, 929 (previously codified at 28 U.S.C. § 1293) (repealed 1961).

[110] *Id.*

[111] Act of Aug. 30, 1961, Pub. L. No. 87-189, § 3, 75 Stat. 417, 417 (1961) (codified as amended at 28 U.S.C. § 1258).

Supreme Court of Puerto Rico before the effective date of [the] Act."[112]

In *Bason*, we focused on that distinction. We explained: When Congress stripped the [Court of Appeals for the] First Circuit of its jurisdiction over the Puerto Rico Supreme Court, it expressly stated that "such repeal shall not deprive the Court of Appeals of jurisdiction to hear and determine appeals taken to that court from the Supreme Court of Puerto Rico before the effective date of this Act."[113]

. . . .

In H.R. 6116, Congress took a different approach . . . . Instead of enacting an exception reserving our jurisdiction over "pending appeals" (or even "pending cases"), Congress chose to make it clear that it is the jurisdiction-stripping (and jurisdiction-conferring) legislation itself that only applies to "cases commenced" on or after the enactment date.[114]

Thus, Defendants now understandably argue that Congress's failure to similarly limit H.R. 6116 to "appeals" commenced on or after the effective date must mean that Congress did not intend any such limitation. In other words, Defendants argue that Congress must have meant "cases" in the generally understood sense. That definition would presumptively include any litigation (i.e., "case") commenced by filing a complaint in the Superior Court of the Virgin Islands after December 28, 2012, the date H.R. 6116 became effective. However, as we have already explained, that argument ignores the U.S. Supreme Court's guidance regarding how we should interpret "cases" in a statute applying only to appeals. As the Court explained in *Slack*, an appeal *is* its own "case" for purposes of such statutes. [115] Therefore we will no longer

---

[112] *Id.* (emphasis added).

[113] *Id.*

[114] *Bason*, 767 F.3d at 206-07.

[115] *See Slack*, 529 U.S. at 482.

assume Congress used "cases" in H.R. 6116 as that word is generally understood.[116]  Moreover, aside from *Bason*, no federal appellate court has interpreted the effective date of a certiorari-stripping statute as an implicit jurisdictional reservation of appellate jurisdiction over cases at the trial level, absent specific language to that effect.

## C. Practical Effects

Moreover, although we cited in *Bason* our Court's statement in a previous case that we should not "blindly" construe undefined statutory terms, we did not heed that admonition.[117]  We did not consider whether "the whole legislation, . . . the circumstances surrounding [H.R. 6116's] enactment, or . . . the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act."[118]  We realize, of course, that our interpretation of a statute should not unduly focus on its impact on pending litigation.  However, the practical consequences of a given interpretation can help inform an inquiry into congressional intent.  As the U.S. Supreme Court instructed in *Griffin v. Oceanic Contractors, Inc.*, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."[119]  It is therefore appropriate to consider "the

---

[116] *See id.* at 481 ("While an appeal is a continuation of the litigation started in the trial court, it is a distinct step.").

[117] *Bason*, 767 F.3d at 206 (citing *Brown*, 740 F.3d at 149).

[118] *Holy Trinity Church v. United States*, 143 U.S. 457, 459 (1892).

[119] 458 U.S. 564, 575 (1982); *see also Comm'r of Internal Revenue v. Brown*, 380 U.S. 563, 571 (1965) ("[I]n interpreting a statute, [a court has] 'some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results . . . or would thwart the obvious purpose of the statute.'  But it is otherwise 'where no such consequences [would] follow and where . . . it appears to be consonant with the purposes of the Act.'" (ellipses and alteration in original)

specific context in which that language is used, and the broader context of the statute as a whole," if we are to "avoid constructions that produce 'odd' or 'absurd results' or that are 'inconsistent with common sense.'"[120]

H.R. 6116 was enacted for the sole purpose of rescinding our certiorari jurisdiction over appeals from the Supreme Court of the Virgin Islands. As noted earlier, the Revised Organic Act established a maximum period of fifteen years for us to exercise certiorari review.[121] That window was created to allow the new Supreme Court of the Virgin Islands

---

(citations omitted) (quoting *Helvering v. Hammel*, 311 U.S. 504, 510-11 (1941)); *In re Magic Restaurants, Inc.*, 205 F.3d 108, 116 (3d Cir. 2000) ("Even where the express language of a statute appears unambiguous, a court must look beyond that plain language where a literal interpretation of this language would thwart the purpose of the overall statutory scheme, would lead to an absurd result, or would otherwise produce a result 'demonstrably at odds with the intentions of the drafters.'" (citation omitted) (quoting *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991)); *United States v. Schneider*, 14 F.3d 876, 880 (3d Cir.1994) ("It is the obligation of the court to construe a statute to avoid absurd results, if alternative interpretations are available and consistent with the legislative purpose.").

[120] *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008) (internal quotations omitted) (quoting *In re Price*, 370 F.3d 362, 369 (3d Cir. 2004)); *see also Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 374-75 (3d Cir. 2012) ("In analyzing whether the statutory language is unambiguous, 'we take account of the specific context in which that language is used, and the broader context of the statute as a whole.'" (quoting *Disabled in Action of Pa.*, 539 F.39 at 210)).

[121] *See* 48 U.S.C. § 1613 (1994 version); *see also* 158 Cong. Rec. H6354 (daily ed. Nov. 14, 2012) (statement of Rep. Bobby Scott) ("The Revised Organic Act specifically grants the [T]hird [C]ircuit appellate jurisdiction *for the first 15 years* of the Virgin Islands Supreme Court's existence." (emphasis added)).

36

to "develop[] . . . institutional traditions" sufficient to justify direct U.S. Supreme Court review.[122]

A committee of our Court found that the Supreme Court of the Virgin Islands had demonstrated such sufficiency in less than fifteen years,[123] and within a year of our Judicial Council unanimously approving that committee's report, Congress enacted H.R. 6116 in recognition of that finding. This was a momentous occasion in the history of the Virgin Islands judicial system. One congresswoman characterized H.R. 6116 as a "historic milestone" demarcating "the verge of accomplishing the final goal of making the U.S. Virgin Islands Supreme Court just like all other [s]tate supreme courts."[124] Perpetuating our certiorari review by extending it to all suits initiated in the Virgin Islands judicial system before H.R. 6116 was enacted is contrary to our recognition of the institutional competence of the Supreme Court of the Virgin Islands and the excellence of its jurisprudence.

Linking the "commence[ment]" of an appeal from the Supreme Court of the Virgin Islands to the filing of a complaint for purposes of our certiorari authority retains that authority beyond the fifteen years Congress originally set for it. The Virgin Islands Bar Association has represented without contradiction that, as of 2014, there were over 6,000 pending cases in the Virgin Islands courts, each taking an average of ten years for adjudication.[125] There is therefore a mounting backlog of cases in the Virgin Islands courts.[126]

---

[122] *1984 Amendment to Revised Organic Act*, title VII, § 704, 98 Stat. at 1739.

[123] *Third Circuit Judicial Council Report*, *supra* note 51, at 23.

[124] 158 Cong. Rec. H6354-55 (daily ed. Nov. 14, 2012) (statement of Del. Donna Christian-Christensen).

[125] *See Fahie*, 858 F.3d at 167 n.6.

[126] Amicus Companion Insurance Company urges that to the extent there is any "backlog" in the Virgin Islands courts, it is an apocryphal one. Br. of Amicus Curiae Companion Ins. Co. 2-3. Yet it is undeniable, even with the data Companion provides, that the "backlog" is increasing.

This very case illustrates the likelihood that a large number of the now-pending cases will not be resolved for years to come. This complaint was filed in 2005, but the claims only reached the Supreme Court of the Virgin Islands on appeal in 2015, ten years later. The Supreme Court of the Virgin Islands issued its decision in this case a year later, in 2016, and we granted the petition for certiorari in 2017, nearly twelve years after the case had originally been filed. It is therefore highly likely that interpreting H.R. 6116 to include all suits filed before H.R. 6116's effective date of December 28, 2012, would extend our certiorari review over a significant number of cases through at least December 2022. Not only would this be ten years past the effective date of H.R. 6116, but it would also be eighteen years after the creation of the Supreme Court of the Virgin Islands and a full three years beyond the fifteen-year period Congress initially set for our certiorari jurisdiction to end. Yet, it is beyond dispute that Congress intended H.R. 6116 to terminate our certiorari review, not prolong it.

We are, of course, aware of the concern expressed in *Bason* that it would be unjust for us *not* to retain jurisdiction over cases filed in the Superior Court of the Virgin Islands before the effective date of H.R. 6116 given the parties' expectations before that legislation was enacted.[127] However, we question the reasonableness of any such expectations. As we have already noted, H.R. 6116 contained no express savings clause or other instruction as to non-appellate cases commenced before H.R. 6116's effective date. Moreover, nothing in the Revised Organic Act, the 1984 Amendments thereto, or subsequent enactments of the Virgin Islands

*See id.* at 3 (showing increases in the V.I. judiciary caseload in 2016 over both 2014 and 2015).

[127] *See Bason*, 767 F.3d at 210 ("[L]ike litigants who filed their certiorari petitions before December 28, 2012, parties who were in the midst of litigating a proceeding in the Virgin Islands courts could have reasonably expected that they would have the right to file a petition for certiorari with the Third Circuit and, at the very least, possibly obtain further review with respect to questions of Virgin Islands law (which would otherwise not be available in the Supreme Court).").

legislature gave anyone reason to believe that our certiorari jurisdiction would continue until a given appeal is ultimately decided. Rather, our certiorari jurisdiction was always to be of relatively short duration.

Moreover, as we have explained, the Revised Organic Act clearly provided for our certiorari jurisdiction to end well before the fifteen years Congress initially allowed for its exercise.[128] Attorneys and litigants therefore had no reason to assume that we would continue to have authority to review any final order of the Supreme Court of the Virgin Islands until their case was ultimately resolved. That was particularly true after the passage of H.R. 6116.[129] In addition, litigants were

---

[128] *1984 Amendment to Revised Organic Act*, title VII, § 704, 98 Stat. at 1739; 48 U.S.C. § 1613 (1994 version).

[129] Amicus Companion Insurance Company wishes to obtain review of an adverse decision by the Supreme Court of the Virgin Islands that is based on Virgin Islands law. Companion Ins. Co. Br., at v. It states that a "key factor" in its decision to appeal the case through the Virgin Islands courts "was the availability of potential certiorari review by this Court if the V.I. Supreme Court's decision was adverse." *Id.* at vi.

Companion's reliance on our certiorari review was misplaced for two reasons. First, the very passage of H.R. 6116—having occurred six years ago confirms Congress's conclusion that the Virgin Islands judiciary warrants treatment "just like every high court in the States and territories," 158 Cong. Rec. H6354 (daily ed. Nov. 14, 2012) (statement of Del. Christensen), and state supreme courts are the final arbiters of matters of state law.

Second, we have long held that we defer to the Supreme Court of the Virgin Islands in matters of local law because that "best ensures that [we] can perform the role given to us by Congress[] to nurture the development of 'sufficient institutional traditions to justify direct review by the Supreme Court of the United States.'" *Pichardo*, 613 F.3d at 97 (quoting 48 U.S.C. § 1613 (1994 version)). Our very infrequent grants of certiorari review have rarely resulted in reversals in the area of local law. We have

forewarned because, even before H.R. 6116 was enacted, Congress had amended similar statutory schemes in order to divest other federal circuit courts of appeals of jurisdiction to review even pending appeals from the local courts of other U.S. territories.[130, 131]

---

overturned or vacated a decision of the Supreme Court of the Virgin Islands only *twice* since that court was created. Neither of those cases appears to have impacted local jurisprudence. Once was in *Bason* itself, which we now overturn. *Bason*, 767 F.3d at 214-16 (vacating the opinion of the court to the extent it addressed the moot issue of the reinstatement of the deceased petitioner). The second instance occurred in the very limited context of a contained local political dispute. *In re Kendall*, 712 F.3d 814, 816 (3d Cir. 2013) (*Kendall II*) (reversing the court's convictions of a judge of the Superior Court of the Virgin Islands for indirect criminal contempt after he published a judicial opinion chastising the court).

[130] *See* Act of Oct. 30, 2004, § 2, 118 Stat. at 2208 (transferring certiorari jurisdiction over decisions of the Supreme Court of Guam from the Court of Appeals for the Ninth Circuit and to the U.S. Supreme Court); *Santos*, 436 F.3d at 1053-54 (deciding, pursuant to Act of Oct. 30, 2004, § 2, 118 Stat. at 2208, that the Court of Appeals for the Ninth Circuit had no further jurisdiction to review decisions of the Supreme Court of Guam, including those that had been pending at the time of enactment).

[131] Our holding is also consistent with our general avoidance of retroactivity in interpreting statutes. Absent clear congressional intent to the contrary, we normally interpret statutes with the presumption that they do not apply retroactively, i.e., to cases pending on the date of the law's enactment. *Hamdan v. Rumsfeld*, 548 U.S. 557, 576 (2006). But as we clarified in *Kendall I*, this presumption against retroactivity does not apply to H.R. 6116 because such a "jurisdiction-stripping statute usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'" *Kendall I*, 716 F.3d at 87 (quoting *Hamdan*, 548 U.S. at 577).

40

## IV. CONCLUSION

In *Bason*, we acknowledged that the Supreme Court of the Virgin Islands had "succeeded in developing sufficient institutional traditions to justify . . . direct review" by the U.S. Supreme Court.[132] Not only have we recognized that court's maturity and commended its development and jurisprudence, but our Third Circuit Judicial Council also recommended that our jurisdiction be withdrawn and that the Supreme Court of the Virgin Islands "enjoy the same relationship with the Supreme Court of the United States as do the highest courts of the several States."[133]

For all the reasons that we have stated, we now hold that H.R. 6116 terminated our jurisdiction over all certiorari petitions from final decisions of the Supreme Court of the Virgin Islands if those petitions were filed on or after December 28, 2012. Having determined that we are without jurisdiction to review this case, we will dismiss the petition for writ of certiorari.

---

[132] *Bason*, 767 F.3d at 210.

[133] *Third Circuit Judicial Council Report*, *supra* note 51, at 23.

BIBAS, *Circuit Judge*, dissenting.

The majority reads H.R. 6116 as providing that the *filing* of a certiorari petition commences a case and so deprives us of jurisdiction over that case. I cannot agree. Under the majority's interpretation, we have certiorari jurisdiction over final judgments of the Supreme Court of the Virgin Islands—up until the moment a litigant asks us to exercise that jurisdiction. That is not what H.R. 6116 says.

"A civil action is commenced by filing a complaint with the [trial] court," not by filing a certiorari petition. Fed. R. Civ. P. 3. The case is the entire civil action, not just the certiorari stage. As the majority's legislative survey illustrates, Congress distinguishes among "cases," "appeals," and "writs of certiorari." And it does so in statutes generally, appellate statutes, appellate statutes governing territorial jurisdiction, and statutes (going back to 1917) governing jurisdiction over the Virgin Islands.

Nor can I agree that *Bason*'s reading would perpetuate our certiorari jurisdiction beyond the fifteen years specified by Congress. If H.R. 6116 applies to a case, then our jurisdiction over that case ends immediately. I see no way to read the statute that would preserve our jurisdiction beyond "fifteen years following the establishment" of the Supreme Court of the Virgin Islands. 48 U.S.C. § 1613 (1994).

I would also not venture into the quicksand of legislative history, or speculate about legislative purpose. The text is clear. And *stare decisis* is a weighty concern, both generally and for litigants in the pipeline who relied on *Bason*. So I would adhere to *Bason*'s reading of H.R. 6116 and hold that we have jurisdiction here.

I respectfully dissent.